### HENRY THOMAS v. THE STATE.

#### No. 2117.    Decided May 1, 1901.

1.—Accomplice to Murder—Circumstantial Evidence—Confession of Principal.

On the trial of an accomplice to murder, the confessions of the principal to the murder are competent evidence against the accomplice; and such confessions make the case of the accomplice one of positive evidence notwithstanding all the other facts are circumstantial in character.

2.—Same—Charge Limiting and Restricting Such Evidence.

On the trial of an accomplice to murder, where the confessions of the principal as to his own guilt have been allowed in evidence, it is the duty of the court, in the charge to the jury, to limit and restrict the consideration of such confessions to proof of the guilt of the principal alone, and to instruct the jury that they can not be considered as facts and circumstances sufficient to establish the guilt of the accomplice on trial.

**3.—Murder in the First Degree—Charge as to Murder in the Second Degree.**

On a trial of an accomplice to murder, where the evidence is cogent that the murder was of express malice and murder in the first degree, the defendant can not complain that the court in its charge submitted the issue of murder in the second degree, which is a charge in his behalf and to his benefit.

**4.—Same—Accomplice to Murder—Verdict Must Find the Degree.**

Our Statute, Penal Code, article 81, provides, that an accomplice to a crime shall be punished in the same manner as the principal; and article 712, Penal Code, makes it mandatory that a verdict for murder must specify the degree of murder of which the jury fined the defendant guilty. This rule is not only applicable, but is imperative in the case of an accomplice, as in that of a principal to a murder, and a verdict against an accomplice to murder which does not expressly find the degree is essentially insufficient and will not support a judgment of conviction.

Appeal from the District Court of Brazos. Tried below before Hon. W. G. Taliaferro.

Appeal from a conviction of accomplice to murder; penalty, twenty-five years imprisonment in the penitentiary.

The indictment charged that on the 25th day of May, 1900, one John Lindley did, of his malice aforethought, kill Pomp Trammel, by shooting him with a gun; and further charged this appellant as an accomplice to said murder, in that he, though not present at the time of the killing, had previously advised and encouraged the said John Lindley to commit said murder. Lindley had been previously tried and convicted of the murder and was sentenced for life to imprisonment in the penitentiary. On this trial John Lindley, the principal, was a witness, and he testified as follows: "I know the defendant, and also knew Pomp Trammell. On Sunday before Pomp was killed the defendant came to my house and told me he had something he wanted me to do, and that if I would promise to do it he would tell me what it was. I told him I did not know, but that if I could I would. He then told me he wanted me to kill Charley McMahan. That Charley McMahan and Pomp Trammell would kill him. I told him I would not kill McMahan. He then asked me if I would kill Pomp. That if I would kill Pomp, he would get some one else to kill McMahan. I told him I did not want to kill Pomp Trammell either; it would be found out, and that if the white folks got after me I would tell it. He said nobody would ever know it, and if they did I could tell that he got me to do it, and that would clear me, and that he would pay me for it. I finally told him I would think about it and let him know. He saw me again and urged me to kill Trammell, but I did not want to do it, and put him off. One night during the week I went to his house and it rained and I had to stay all night. Slept with George Earl. He and I were on the gallery and his wife and George Earl were in the kitchen eating, and he again asked me about it, and I told him I would kill Pomp. I did not intend to do it, but the next morning I concluded I had as well do it. Friday morning, after concluding I would kill him, I took my gun and started, and went by defendant's on the way. While on the way from my house to defendant's I saw Louis Williams. I fired my gun before I got to defendant's. I

went into defendant's field where he was plowing and told him I was going to kill Trammell. He asked me to take his gun. I told him no, I would use mine; that I knew my gun. He then gave me his horse to hold and he took my gun and stepped off to his pouch and loaded it and brought it to me. I saw him have a shell. · I left him and went to Trammell's field and he and his wife were plowing. I got behind some bushes and waited for them to separate. They plowed down to a ditch near to where I was and Trammell stopped and his wife turned and plowed on back. When Trammell started to his plow, I cleared my throat to attract his attention, and as he looked around I spoke to him and asked if he was planting cotton. He said he was muddying it in. We talked on a little about crops, etc., and he started to go to plowing, when I asked him what time it was. He looked at the sun and as he did I shot him. I ran and as I did, I shot him again, but don't know whether I hit him or not the second shot. I had on an old pair of run-down shoes with soles loose from uppers, and my toes out. I ran across a sand bar in the field on my tip toes. I then went on back to where defendant was in his field and told him I had killed Pomp Trammell. Defendant said, 'No, you have not,' and seemed not to believe it; and I said 'If you were in the fix he is in, you would think I had done it.' I then left defendant and went to my field to work. The killing was about 10 o'clock a. m., on Friday. Defendant came to my field that evening and asked me if I had told anyone I was in his field that day; and I told him I had, and he asked me if I could not take it back, and I told him yes, if he wanted me to."

Cross-examined: "I testified in my examining trial. On that trial I testified that I killed Trammell because he had abused my mother. On that trial I made this statement: 'Year before last deceased talked it over the country that Ed Williams was keeping my mother, and that on the day of the killing I went to the field of deceased and walked up to him and said: "Mr. Trammell, year before last you talked about mother pretty bad;" he said, "Yes," and I then asked why he did it. He said, "because she was whoreing around the country like a dog," and he looked mad, and then I put it to him.' I also said on that trial that Mr. Gainor (when he came to the jail) told me he knew all about it, and if I would tell the truth about it and put the defendant in it, that would save my neck. I also said on that trial that defendant had nothing to do with the killing. These statements were not the truth. I made them because Mr. Board, defendant's attorney, said he could get me out on a two years term in the penitentiary if I killed Trammell because he abused my mother. I killed the deceased because the defendant begged and persuaded me to do so. I did not kill him because of insults to my mother. About a week before the killing my mother and I were plowing and I said to her, 'Ma, Mr. Trammell sure did talk bad about you when we lived on Kurten's place,' and she said, 'Yes,' and I then told her he would not talk about her any more. I picked cotton two

years ago and also last year for Mr. Gilbert Hammett. I did not tell him or his wife, either of these years, that I intended to kill Trammell because of his remarks about my mother. I told on the examining trial that I went to the defendant's house and he was not there, and I went in and loaded my gun out of his ammunition. Mr. Board did not know this before I testified to it. Thomas did not say anything about paying me when I told him I had killed Trammell, and I did not say anything to him about it."

No further statement necessary.

*A. G. Board, J. E. Butler,* and *W. T. Young,* for appellant, filed an able and interesting brief.

*D. E. Simmons,* Acting Assistant Attorney-General, for the State. [No briefs for the State found with the record.—Reporter.]

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted as an accomplice to the murder of Pomp Trammell,—John Lindley being the principal,—and his punishment assessed at twenty-five years confinement in the penitentiary.

The confessions of Lindley, the principal, were admitted in evidence over appellant's objections. In this there was no error. It was necessary, in order to secure the conviction of the accomplice, to prove the guilt of the principal as alleged, and any legitimate fact or circumstance which showed or tended to show the guilt of the principal was admissible in evidence for that purpose; and this is true whether or not Lindley was on trial. The guilt of the accomplice is dependent upon the guilt of the principal,— that is, there can be no accomplice without a principal; and, in proving the guilt of the accomplice, it is necessary to show the guilt of the principal. So the confessions of Lindley were admissible against him as principal, in proving that he actually did the killing. These confessions and statements of Lindley, however, were withdrawn from the consideration of the jury by the court in the charge. If upon another trial the confessions of Lindley should be used, the court should restrict the jury's consideration in regard to Lindley's guilt only, as they are not facts or circumstances to prove appellant's guilt as accomplice, and can only be used against Lindley to show his guilt as principal.

The court did not err in failing to charge the law applicable to circumstantial evidence. The testimony of Lindley is positive to the fact that appellant advised and urged him to do the killing and furnished him a gun for that purpose, and with said gun he committed the homicide. Under the unbroken line of decisions this relieves the case from being one of circumstantial evidence. Exception was reserved to the charge of the court because it submitted the theory of murder in the second degree; the contention being that, if the testimony of the State be true, it was a killing upon express malice, and therefore murder in the first degree. The evidence is very cogent, showing a cold-blooded

killing on the part of Lindley, and the evidence against appellant is to the effect that he urged and advised Lindley to do so, and furnished the gun with which Lindley did the killing. This would have justified a verdict for the higher offense. But can defendant complain because he was given the benefit of a charge submitting the inferior degree of murder? Under the decisions of this State, this question must be answered in the negative. When the indictment charges murder, the party may be convicted of any grade of homicide, and the conviction for the lower grade of murder will not be set aside because the evidence shows the higher grade. Baker v. State, 4 Texas Crim. App., 223; Powell v. State, 5 Texas Crim. App., 234. This principle was expressly recognized in Parker's case, 22 Texas Criminal Appeals, 105, and Fuller v. State, 30 Texas Criminal Appeals, 559.

The verdict is attacked because it fails to specify the degree of murder. The verdict is as follows: "We the jury find the defendant guilty as an accomplice to the murder of Pomp Trammell, as charged in the indictment, and assess his punishment at confinement in the State penitentiary for twenty-five years." Article 712, Penal Code, provides: "If the jury shall find any person guilty of murder they shall also find by their verdict whether it is of the first or second degree; and if any person shall plead guilty to an indictment for murder, a jury shall be summoned to find of what degree he is guilty, and in either case they shall also find the punishment." Without interruption, it has been held under this statute that it is absolutely essential to the validity and sufficiency of the verdict that it specify the degree of murder of which the party is convicted. For collation of authorities, see section 1262, White's Annotated Penal Code. It is also as well settled that the accomplice is guilty of the same offense as the principal, although it is necessary to indict him as an accomplice. See section 102, Id., for collated authorities; Carlisle v. State, 31 Texas Crim. Rep., 537. Article 81, Penal Code, provides that "accomplices shall in all cases not otherwise expressly provided for be punished in the same manner as the principal offender." The distinction between principal offenders and accomplices consists in the facts and circumstances which connect defendant with the actual crime. The principal is guilty by reason of the fact that he commits the actual crime; as, in homicide, he does the actual killing, whereas the accomplice advices, urges, or furnishes the means to the principal for the purpose of carrying out the design or committing the offense, he not being present. The accomplice therefore is guilty of the murder, if it be a murder, by reason of the fact that he brings himself within the statutory definition of an accomplice, by furnishing the means or other acts which constitute him such. The crime is the same (that is, it is murder as much on the part of the accomplice as the principal); and, while the case must be charged which makes him an accomplice by reason of the statute, still his ultimate offense is found in the fact of killing (that is, it takes the acts as accomplice, together with the killing by the principal to justify his conviction). So under this statute the accomplice is punished in the

same manner as the principal offender. The principal offender would be punished, in this case, if found guilty of murder; and, of course, the verdict against the principal must specify the degree of murder. Then, if the acomplice is punished in the same manner as the principal, it is for murder, and the verdict against him must specify the degree. See authorities already cited. Because of the insufficiency of the verdict of the jury, the judgment is reversed and the cause remanded.

*Reversed and remanded.*