## TOM HART v. THE STATE.

### No. 4178. Decided June 19, 1909.

### Rehearing denied October 13, 1909.

**1.—Murder—Evidence—Motive of Deceased.**

Upon trial for murder there was no error in excluding testimony why defendant's witness had deceased arrested, it appearing from the record that the witness had already been permitted to testify to the threats by deceased against the defendant, and his conduct towards defendant's sister.

**2.—Same—Evidence—Selfserving Declaration.**

Where, upon trial for murder, the court permitted defendant to prove the misconduct of deceased towards his sister, and all the threats that were made by the deceased against defendant, there was no error to reject testimony as to the effort on the part of defendant to have deceased arrested for such misconduct towards defendant's sister.

**3.—Same—Evidence—Insult to Female Relative.**

Where, upon trial for murder, the defendant had been convicted of manslaughter with the lowest penalty, and the killing occurred at the second meeting after the alleged insulting conduct by deceased towards defendant's sister, there was no error in excluding testimony with reference to statements made by deceased about defendant's sister.

**4.—Same—Evidence—Hearsay.**

Testimony as to what a physician told defendant's witness with reference to an examination of defendant's sister was hearsay, and correctly excluded.

**5.—Same—Evidence—Impeachment.**

Upon trial for murder, where the defendant, on cross-examination by the State, denied the imputation that he kept a disorderly house, there was no error in permitting the State to ask this question.

**6.—Same—Evidence—Moral Turpitude.**

Where, upon trial for murder, the court withdrew from the jury certain testimony that defendant was arrested for shooting craps, which had been illegally admitted, there was no reversible error in view of the minimum punishment for manslaughter.

**7.—Same—Argument of Counsel.**

Where, upon trial for murder, the evidence eliminated the issue of self-defense, and the jury assessed the lowest punishment for manslaughter, the argument of State's counsel upon testimony which had been withdrawn from the jury, while unauthorized, could not prejudice the rights of defendant, and there was no reversible error. Such argument, however, was unwarranted by the testimony, and was out of place.

Appeal from the District Court of Johnson. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Phillips & Bledsoe,* for appellant.

*F. J. McCord,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The facts, in substance, show that deceased had debauched the sister of appellant, or at least appellant had every reason to so believe. On the night of the homicide appellant, who was running some character of store in the suburbs of Alvarado, was engaged in attending to the duties around the store, and deceased came in and demanded his clothes, appellant telling him at that time he would not give them to him as he had to go up town to get some coal oil, but would do so on his return. Some hot words ensued between appellant and deceased, appellant proceeding on his way to town, and subsequently went to a bank where he was regularly employed as janitor to do his usual work. While there engaged in said work deceased was seen on the outside by appellant standing in front of the bank. Appellant discovered deceased in front of the bank as he started to go out of same, and returned to a desk in the bank and secured a pistol, and as he started out deceased met him just inside of the bank door. A scuffle appears to have ensued in which the pistol was discharged, the ball going into the floor. Deceased ran some twenty or thirty feet to the front of a barber shop, where he fell with a wound in his back fired therein by appellant. A can that had contained coal oil was subsequently found on the floor just inside of the door of the bank, corroborating appellant's statement to the effect that he had started home with the coal oil when the difficulty began.

The court in his charge to the jury submitted the issues of murder in the first and second degree, manslaughter and self-defense. Bill of exceptions No. 1 shows that while Bell Winfield, the mother of appellant, was on the stand, she was asked the following question: "You say you had deceased arrested about July 1, 1908, now state why you had him arrested and what complaint, if any, you made against deceased." To this question the county attorney objected. Appellant stated to the court that he could show by said witness, who was the mother of appellant, that she had deceased arrested for having had intercourse with Bessie Hart, the sister of deceased, after the witness had learned that deceased had been having intercourse with said Bessie Hart, who was at that time only fourteen years old; that said testimony was offered in explanation of other testimony of said witness, Bell Winfield, to the effect that on the day after she had deceased arrested, deceased upon being discharged from custody, came to the home of said witness, and while there and in conversation with said witness, had threatened to kill defendant if defendant should interfere between said deceased and Bessie Hart, which threats were afterwards communicated to defendant by deceased; the witness Bell Winfield testified that after she had deceased arrested, that on the following day he was discharged and came to witness' home and that deceased admitted that he had

been intimate with Bessie Hart and told witness that she had accomplished nothing by having him arrested, whereupon witness had said to deceased, that she wanted him to stay away from and let her daughter alone, and that if deceased did not do so, witness would tell her son, who was the defendant, all that she knew about the relations between deceased and her daughter and that defendant would make deceased let her daughter alone, whereupon deceased then said to witness, "Tom is as afraid of me as you are, and if he interferes with me and Bessie I will kill him," defendant. Appellant insists the evidence is admissible to show motive on the part of deceased for making said threat, and to show that said threat was seriously made; and also to show a motive on the part of deceased for making an assault on defendant at the time of the killing which defendant claimed was made on him by deceased, and that on account of such assault appellant had to kill deceased to save himself from death or serious bodily injury at the time of the killing. This bill is approved with this explanation: "That most of the testimony set out in this bill was allowed to go to the jury. See this witness' evidence set out in statement of facts." The statement of facts shows that the court permitted witness to testify that deceased threatened the life of appellant and about deceased's conduct towards the daughter of witness and sister of appellant, but refused to permit the witness to testify that she had filed a prosecution against deceased. The ruling of the court was correct. The fact that the witness had deceased arrested would add nothing to the testimony of the witness about the matters out of which this homicide grew.

Bill of exceptions No. 2 shows that appellant offered to prove by Will Ford that appellant, a few hours before the homicide, came to him and wanted him to have deceased arrested for having carnal intercourse with his fourteen year old sister and because deceased had threatened to kill him, defendant. The court qualifies this bill with the statement that "the defendant's evidence and his wife's shows that defendant and deceased met at defendant's cold drink stand and after his mother had informed him of the assault on his sister and the killing took place at the second meeting of the parties and hence the proposed evidence was immaterial." We do not think the effort on the part of appellant to have deceased arrested would be admissible, since it would be a self-serving declaration. The court permitted appellant to prove all the misconduct of deceased towards his sister and all character and kinds of threats that were made by deceased against appellant. This was the only germane testimony touching the motive and animus actuating appellant at the time of the homicide.

Bill of exceptions No. 3 shows the defense offered to prove by John Mathews the following: "If you had any conversation with deceased, George Henry, a short time prior to the homicide, about

his relation with Bessie Hart, state what deceased said to you." The county attorney objected to this question and the court sustained the objection. Appellant stated that they expected to and could prove by said witness, and that he would answer if permitted, that a short time before the homicide witness, with several others, were in company with deceased, and that deceased had stated to them, that all he wanted was to be with Bessie Hart, that when he was with her he could and always had done as he pleased, meaning thereby that he had at his good pleasure had intercourse with said Bessie Hart. This bill is approved with the same explanation as shown in bill of exceptions No. 2, the killing having occurred at the second meeting as shown in defendant's evidence. This evidence was immaterial. Defendant was only convicted of manslaughter with the lowest penalty, and hence this evidence would only reduce the offense to the one that he was convicted of. With the explanation of the court we think the ruling was correct or at any rate harmless.

Bill of exceptions No. 4 complains that the court erred in refusing to permit appellant's mother to testify that she had had Bessie Hart, appellant's sister, examined, and that the doctor told her that she showed signs of having intercourse with some man. This testimony was clearly inadmissible, since it was hearsay.

Bill of exceptions No. 5 insists the court erred in permitting the State to ask appellant, while a witness on the stand, if he had not in the fall and winter previous run a whorehouse in Alvarado and come to Cleburne and get women and take there for immoral purposes. Appellant answered in the negative. Certainly, in the light of appellant's answer there was no error authorizing a reversal of this case.

Bill of exceptions No. 6 shows the county attorney propounded to appellant this question: "Is it not a fact that your house was raided as a gambling-house by the officers last fall, and that in such raid you were arrested in five cases and that you then pleaded guilty to the charge?" Over appellant's objection he was forced to answer and stated that his house was never raided by the officers; that he was arrested last October for shooting craps and plead guilty to the charge. The bill is approved with the explanation attached to bill of exceptions No. 5. The explanation attached to bill No. 5 is as follows: "That this evidence and that complained of in bill No. 6 was admitted as affecting the credibility of the witness, but when I came to charge the jury I examined the stenographer's notes and the answers of the witness not being as strong as I had thought they were I withdrew the evidence on that question from the jury and instructed them not to consider it against the defendant for any purpose." This evidence was not admissible, but in view of the fact that the court withdrew the testimony from the jury and instructed them not to consider said testimony for any purpose, we

would not be authorized to reverse this case in view of the minimum punishment for manslaughter having been inflicted by the jury.

Bill of exceptions No. 7 complains of the argument of the county attorney, which is as follows: "Gentlemen of the jury, I say to you the testimony in this case shows that this defendant has been running a nigger whorehouse and gambling-house in the town of Alvarado. Why, he comes here to Cleburne and takes a lot of nigger whores over there, right in the house with his wife—why, yes, that's Tom, the immaculate Tom Hart, who cares no more for the laws of this country than he does for the wind that blows, and if you want him to keep on running his whorehouse and gambling-hell over the good people of this country, why turn him loose; I can stand it." The bill is approved with this explanation: "The jury were instructed not to consider that evidence." The court should have reprimanded counsel and charged the jury to disregard this argument, because the evidence going to show the facts upon which the argument was predicated, according to the explanation of the court, had been excluded, and the evidence was clearly inadmissible. But the facts in this case show that deceased and appellant engaged in a difficulty inside of the bank door. Appellant in an effort to get his pistol out either shot it or it involuntarily discharged and the bullet entered the floor of the bank building. Deceased immediately ran some fifty or one hundred feet pursued by appellant, appellant all the while shooting at the deceased, and the evidence shows that finally one ball struck deceased in the back, killing him and he fell and expired in front of a barber shop some fifty or one hundred feet away from where the difficulty began. This we take it eliminates the issue of self-defense, and in view of the fact that the jury gave appellant the minimum punishment for manslaughter, the argument of the county attorney is not such error as did or could have prejudiced the rights of appellant, under the facts of this case, as to authorize a reversal of this case. But we can not insist too often upon State's counsel staying within the record and not discussing matters that are not admitted as testimony in the trial of the case. The same may be said of bill of exceptions No. 8 which practically presents the same matter with practically the same explanation by the court.

The charge of the court, in the light of the special charges given asked by appellant, is correct. Appellant's special charges as far as applicable were covered by the main charge of the court.

Finding no error in this record authorizing a reversal of the case, the judgment is in all things affirmed.

*Affirmed.*

[Rehearing denied October 13, 1909.]