OLLIE ROBERTS v. THE STATE.

No. 1903.    Decided June 28, 1912.

Rehearing granted October 23, 1912.

**1.—Murder—Evidence—Bills of Exception.**

The statute requires that bills of exception must be filed with the clerk within the given time, and the file marks of the clerk must appear thereon; but where it is shown that such bills were filed, but the file mark inadvertently omitted in the transcript, the same will be considered on appeal.

**2.—Same—Charge of Court—Practice on Appeal.**

Where the defendant was convicted of murder in the second degree, a complaint of the charge of the court on murder in the first degree will not be considered on appeal.

**3.—Same—Charge of Court—Manslaughter.**

Where, upon trial of murder, the evidence would have sustained a verdict of murder in the first degree, there was no reversible error in the court's definition of implied malice and his repetition thereof, as defendant was convicted of murder in the second degree and could not complain; there being no issue of manslaughter in the case.

**4.—Same—Charge of Court—Insanity.**

Where, upon trial of murder, the court's charge placed the burden of proof on defendant to show by a preponderance of the evidence that he was insane, there was no error; besides, the complaint was too general.

**5.—Same—Charge of Court—Uncontrollable Impulse.**

Where, upon trial of murder, the defendant requested a charge on the question of uncontrollable impulse, there was no error in refusing same, as the question was whether he knew the nature and quality of the act charged against him.

**6.—Same—Evidence—Continuance.**

Where, upon trial of murder, defendant's application for continuance showed due diligence, and that the absent testimony would be material in establishing the plea of insanity, the continuance should have been granted.

**7.—Same—Evidence—Acts of Deceased.**

Upon trial of murder, it was error to admit testimony that prior to the killing the deceased was kneeling down at the church altar crying, it not being shown that defendant was present or could have seen this.

**8.—Same—Evidence—Confessions.**

A confession can not be introduced in evidence unless it be reduced to writing under the requirements of the statute, nor can its contents be introduced in evidence unless the absence of the original is accounted for.

**9.—Same—Argument of Counsel.**

The statement of the county attorney, that the jury ought to hang the defendant and that if they did not do so, and sent him to the penitentiary,

the Governor would pardon him under some flimsy pretext, etc., while highly improper, was not reversible error, as the death penalty was not inflicted.

**10.—Same—Practice on Appeal.**

　　Complaints to the selection of a special judge, and other matters which will not arise on another trial need not be considered on appeal.

Appeal from the District Court of Caldwell. Tried below before the Hon. M. C. Jeffrey, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, nine years imprisonment in the penitentiary.

The opinion states the case.

*E. B. Coopwood,* for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted for murder, found guilty of murder in the second degree and his punishment assessed at nine years in the penitentiary.

The facts would show that deceased had killed appellant's brother, some two or three years prior to this homicide. That deceased had left the county and moved to San Antonio, and went back on this trip to attend the funeral and burial of Elwood Johnson. That after the funeral exercises in the church as deceased started out of the door, appellant fired at him three times, two of the shots taking effect, both being fatal wounds in the opinion of the doctors who were called to attend him. The evidence would show that deceased was weeping and had his hand over his eyes, when the first shot was fired, and the others followed in rapid succession. The evidence for the defendant seeks only to show that appellant was insane at the time he did the shooting, offering proof of no other justification.

There are in the record a number of bills of exceptions, and if we were permitted to review them they might present error, but inasmuch as they bear no file marks; do not show they were ever filed with the clerk of the court, and if they were delivered to the clerk, when they were so delivered. In an unbroken line of decisions this court has held that the bills must show, on appeal, that they had been filed with the clerk, when approved by the judge, and the date of filing must be shown. These bills do not show when they were presented to the judge, nor when delivered to the clerk, bearing no date and no file marks. Consequently we will not review the bills of exceptions. The statute requires that the bills must be filed with the clerk, and filed within a given time, and this must be evidenced by the file marks of the clerk. The record being in this condition we can not review the grounds in the motion for new trial, based on alleged bill of exceptions.

The defendant being found guilty of only murder in the second degree, and his punishment being assessed at only nine years in the penitentiary, we will not discuss nor pass on those paragraphs in the motion complaining of the charge on murder in the first degree.

The evidence did not raise the issue of manslaughter, and the court did not err in refusing to charge thereon, and the definition of implied malice is in language frequently approved by this court, and the fact that the court repeated this definition in his charge was not hurtful to defendant. The facts in this case would sustain a verdict of murder in the first degree, and if the court by making the definition of implied malice prominent, aided counsel for appellant in getting the offense reduced to that grade, with almost the minimum penalty, he should not complain. If his client is not insane, as found by the jury, counsel has cause to congratulate himself on the verdict returned.

Appellant complains that the charge on insanity is confusing, disconnected and not applicable to the facts in the case. The charge is not subject to these criticisms, and the grounds are too general to be considered. The complaint that it placed the burden on defendant to prove by a preponderance of the evidence that he was insane, presents no error. This is in accordance with the decisions of this court. Fisher v. The State, 30 Texas Crim. Rep., 502, and cases cited in section 51, Whites' Annotated Penal Code.

The special charges requested, instructing the jury that "if defendant was moved to commit the homicide by an uncontrollable impulse," to acquit him, should not have been given. This question is thoroughly discussed in Leache v. The State, 22 Texas Crim. App., 279, wherein the rule laid down as the true rule is, that the law does not require as the condition on which criminal responsibility shall follow the commission of crime the possession of one's faculties in full vigor, or a mind unimpaired by disease or infirmity; he can only discharge himself from responsibility by proving that his intellect was so disordered that he did not know the nature and quality of the act he was doing, and that it was an act which he ought not to do. (See also Hurst v. State, 40 Texas Crim. Rep., 378, and cases cited.)

The evidence amply supports the verdict and judgment is affirmed.

*Affirmed*

ON REHEARING.

October 23, 1912.

HARPER, Judge.—At the last term of this court this case was affirmed, the court refusing to consider the bills of exception, because they bore no file marks and the record did not disclose when they were presented to the court, nor when filed with the clerk. Since then appellant has filed a motion for rehearing, and produces evidence that the bills were filed on the 15th day of February, 1912,

(being within the time permitted by law) and the clerk certifies that the transcript is incorrect, and the bills in fact bear this file mark, consequently appellant is entitled to have the questions presented by the bills reviewed, and three of them present errors that will necessitate a reversal of the case.

Appellant's principal defense was that he was insane at the time of the commission of the offense; that he had brooded over the death of his brother, until he was mentally unbalanced and in that condition of mind that he did not know right from wrong. He moved to continue the case on account of the absence of Clinch Franks and Mrs. Clinch Franks. By Clinch Franks he states he expects to prove, and the witness would testify, that he had known defendant for a number of years, and that prior to the death of his brother, defendant was of a cheerful, happy disposition, and since the killing of his brother there had been a marked change in his conduct, disposition and behavior; that he had brooded over the death of his brother to such an extent that his reason had become dethroned, and his mind unbalanced; at the time of the killing defendant did not know right from wrong, and was not responsible for his acts.

By the witness Mrs. Clinch Franks he states he expects to prove, and that she will testify that she is a sister of defendant and has known him all of his life; that at the time of the killing defendant's mind was in such condition as to render him incapable from knowing right from wrong; that he was insane.

It was shown by defendant that the witnesses had been duly summoned, and by the testimony of the attending physician that Mrs. Franks was sick, and that he was daily expecting her to be confined; that he had waited on her several times when she gave birth to children, and in each instance it had very near caused her death, and it was unwise and unsafe for her husband to leave her bedside. That the woman could not be brought to the courtroom without endangering her life, and her husband should not be brought.

It may be that the court had but little faith in this defense, but the more meager the testimony on this issue the greater reason for defendant to have all the testimony on the point he desired and had used due diligence to secure, and under the showing made in this case we think the court erred in not granting the continuance.

In another bill it is shown that a witness was permitted to testify that prior to the killing deceased was "kneeling down at the altar crying." As defendant was not in the church and could not and did not know what deceased was doing at that time, and it was not an issue in the case, this was error. Of course, when deceased came in sight of defendant, then the acts and conduct of both parties would be admissible, but the acts and conduct of deceased, prior to the killing and having no relation thereto, should not be admitted.

It appears that shortly after the killing defendant was arrested,

and while under arrest made a statement or confession to the county attorney which was reduced to writing, but the writing was not produced on the trial of this case, and the county attorney was permitted to testify as to the contents of the confession. A number of objections were urged to the introduction of this testimony, and on another trial before this testimony will be admitted it should be shown that all the requirements of article 790, as amended by the Acts of the Thirtieth Legislature (Chap. 118) had been complied with; otherwise the testimony will be inadmissible. (Henzen v. State, 62 Texas Crim. Rep., 336, 137 S. W. Rep., 1141.) If this proof is made, then if the written confession has been lost, oral proof of its contents will be admissible, if the evidence shows its loss and a diligent search has been made for it, and it can not be found. This much is said, as the case is reversed on other grounds, and the bill is in such condition that from it we could not tell whether all this proof was made or not; in fact one of the objections urged is that the "absence of the written statement had not been accounted for in a way to render secondary evidence of its contents admissible."

Many of the remarks of the prosecuting officers in their address to the jury were objected to, it being alleged, among other things, that the county attorney told the jury: "that they ought to hang the defendant, if they did not do so and sent him to the penitentiary the Governor on some flimsy pretext would pardon him, and he would assassinate some other citizens of the State." Of course, these remarks were highly improper, but as the jury did not inflict the death penalty, they would not present reversible error, but attention is called to the matter, that on another trial the prosecuting officers will confine their remarks to the discussion of the evidence adduced on the trial. Courts and court officers should not reflect in this way on the chief executive of the State. He has certain functions conferred by law on him, and that he will properly discharge them should always be presumed. At least it is improper to urge a more severe penalty than the jury might otherwise feel inclined to inflict, on the assumption that some future governor would not properly discharge the duties of his office.

The manner of selection of a special judge we do not deem it necessary to discuss, as this matter will not likely arise on another trial of the case, and the other matters complained of present no error. However, on account of the errors above pointed out, the motion for rehearing is granted, the former judgment is set aside, and the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*