THE PEOPLE, RESPONDENT, *v.* BONELLI, APPELLANT.

Appeal from the District Court of San Juan, Section 2.

No. 454.—Decided February 5, 1913.

CRIMINAL LAW—INSTRUCTIONS TO JURY—BILL OF EXCEPTIONS.—Where the instructions to the jury are included in a bill of exceptions which is not signed by the trial judge they have no value and cannot be considered by this court.

ID.—ASSAULT WITH INTENT TO COMMIT MANSLAUGHTER.—The doctrine established by this court in the cases of *The People* v. *Dumas*, 14 P. R. R., 384, and *The People* v. *Llauger*, 14 P. R. R., 534, holding that there is such a crime as assault with intent to commit manslaughter, is ratified in this case.

ID.—UNPREJUDICIAL ERRORS—INSTRUCTIONS TO JURY—ERRONEOUS DEFINITION OF CRIME.—It is not prejudicial to the accused for the trial court to err in.

. defining the legal meaning of a crime when the accused has been found guilty of a crime of a less degree.

ID.—UNPREJUDICIAL ERRORS.—It is not an error prejudicial to the accused to be ·found guilty of the crime of assault with intent to commit manslaughter when the evidence shows an assault with intent to commit murder.

ID.—INSANITY—VERDICT CONTRARY TO EVIDENCE—EXPERT TESTIMONY.—The jury having considered insanity not proven, it cannot be said that the verdict of guilty is contrary to the evidence merely because the accused introduced evidence tending to establish insanity as his defense, for the opinion of experts are not binding upon the jury.

ID.—MOTIVE OF CRIME—TESTIMONY OF VICTIM.—There is no rule to prevent the victim from testifying concerning facts witnessed by her, although they may serve to show the motive for the crime.

ID.—INSTRUCTIONS TO JURY.—The court may reject the whole of an instruction to the jury asked for by the accused although it is erroneous only in part.

The facts are stated in the opinion.

*Mr. Charles E. Foote, fiscal,* for The People.

*Mr. Herminio Díaz Navarro* for appellant.

MR. JUSTICE ALDREY delivered the opinion of the court.

An information was filed in the District Court, of San Juan, Section 2, charging the appellant, Pablo M. Bonelli, with what the *fiscal* termed assault with attempt to kill, in that on or about October 12, 1910, in Loíza, which is in the judicial district of San Juan, he unlawfully, wilfully, maliciously and with the deliberate intention of committing murder, assaulted his wife, María Luisa Piñero, with a revolver, firing three shots at her.

Having pleaded not guilty, the defendant was tried by a jury and found guilty of assault with intent to commit manslaughter. A motion for a new trial made by the defendant having been overruled, judgment was then rendered sentencing him to confinement in the penitentiary for two years and three months at hard labor and to pay the costs. It is from this judgment and from the action of the court overruling the motion for a new trial that the present appeal has been taken.

The following are the grounds appearing in the assignment of errors filed by the appellant upon which he bases his

appeal asking for the reversal of the judgment or for an order granting a new trial.

"1. The court erred in its instructions to the jury as well in giving the legal definition of 'attempt to kill,' 'murder' and 'homicide' as in the statement that on a charge for the commission of the first of said crimes a verdict of guilty of assault with intent to commit manslaughter may be found, and as in its reference to aggravated assault.

"2. The court erred in charging the jury with regard to aggravated assault and in refusing to instruct that a verdict for simple assault would be proper under the information.

"3. The court concluded its charge to the jury as follows:

" 'In conclusion, you may find a verdict in any of the following forms: We find the defendant *not guilty*, or we find the defendant *guilty of the crime of attempt to kill*, or we find the defendant *guilty of the crime of assault with intent to commit manslaughter*. These are the three forms of verdict from which you may choose in this case.'

"4. In dealing with the plea of insanity entered by the defendant and on which he introduced oral testimony, the charges said:

" 'The plea of insanity is a defense which may be and often is alleged *in cases where the proof thereof is so full and complete that no other means of defense is available for the purpose of avoiding a conviction and escaping the consequent penalty.'*

"5. The verdict is entirely contrary to the evidence, not only because the weight thereof is contrary to the alleged crime of which the defendant has been found guilty, but because it also supports the theory of the defense during the trial."

A perusal of the foregoing shows that the first four grounds are based upon errors which the appellant alleges. were committed by the judge of the court below in his charge to the jury.

In the transcript of the record which came up with this appeal there is a paper containing the instructions given by the court to the jury, but it is not authenticated by the signature of the judge, for which reason we cannot consider them as such and we are without a basis upon which to review the errors alleged to have been committed by the court. *The Peo-*

*ple* v. *Dones,* 9 P. R. R., 423; *The People* v. *Robles,* 10 P. R. R., 470, and *The People* v. *Coll,* 18 P. R. R., 355.

When the instructions to the jury have not been signed by the judge we cannot say that they and no others were the ones given to the jury, and even though they were taken by the court stenographer, without the signature of the judge we cannot give them any value.

But although on this account we are unable to consider the first four grounds of error no wrong will be done to the appellant because the main ground of his appeal is that no such crime exists as that of assault with intent to commit manslaughter, of which he has been convicted, and that said crime is not comprised as a crime of less degree in an accusation of assault with intent to commit murder. These are questions which have been decided already by this court in *The People* v. *Dumas,* 14 P. R. R., 384 to 393, and in *The People* v. *Llauger,* 14 P. R. R., 534, and there is no reason why we should change the opinion therein maintained for the doctrine laid down in said cases is applicable to the one at bar. As far as the errors committed in the legal definition of attempt to kill and murder are concerned, they will not be taken into consideration because, if such errors exist, the defendant not having been convicted of the crime with which he was charged but of a lesser crime, cannot be said to have suffered thereby. We refer also to the Dumas case above cited.

Therefore, the question we are called upon to consider is that set forth in the fifth and last error assigned—that is to say, that the verdict was not only entirely contrary to the evidence, but also that the evidence supports the theory maintained by the defense at the trial.

Said theory is no other than the insanity of the defendant at the time of committing the acts with which he has been charged by the *fiscal* and his witnesses. In fact all the evidence introduced by the district attorney tended to prove the commission of the crime charged, while on the other hand the defense introduced a large number of witnesses whose tes-

timony all tended to prove the insanity of the defendant at the time of committing the crime with which he is charged, some of whom dealt with the character and temperament of the defendant, others testifying that epilepsy was hereditary in the family, and several physicians were of the opinion that their colleague, Dr. Bonelli, was insane at the time he committed the acts. Only one of the witnesses for the defense, Angel Colón, who had been a coachman of the defendant for some time, testified also that on the night the crime was committed he saw a woman pass along the street followed by a man who said to her: "María Luisa, don't run away, I am not going to hurt you," and that he then heard several shots which were fired in the air, not knowing who fired them, that both were walking along quietly and that later they were found to be Dr. Bonelli and his wife.

The evidence for The People was strong, ample and clear and, in some parts, was supported by the evidence introduced by the defendant, being contradicted only in part by the aforesaid witness, Angel Colón.

Among the witnesses for the prosecution María Luisa Piñero testified substantially that having been seduced by the defendant she insisted that he repair the injury by marrying her, and upon his refusal to do so she had to communicate the facts to her father, after which her father had an interview with Dr. Bonelli and the latter called at her house one evening and they were married and remained there a week. That at the end of that time, one Sunday evening she left with her husband to go to his house and that he threatened her on the way, saying that if she insisted on living with him her days were numbered as he was going to kill her, a threat which he had made to her before if she should compel him to marry her; that about midnight of the first night she spent at her husband's house she was awakened by somebody touching her on the arm. It was her husband who repeated that he was going to kill her; he took a small piece of some white thing, put it into a glass of water and, taking a small

syringe, said to her: "This is strychnine, I'm going to kill you," and insisted, although she was not sick, in putting an injection into her neck; that she resisted but had to succumb as he threatened her with a revolver which he placed at her breast; that he tried to do the same thing to her the next night and began to take out some tablets, but upon her refusal to allow him to give her any more injections they struggled and she fell to the floor, after which he forced her to take a blue tablet which she took from her mouth when he went to get some water to aid her in swallowing the tablet, after which she vomited; that on the following Wednesday she sent for her mother, but she did not dare tell/her what was happening because her husband was present, and that on that night— October 12—she saw that he had a silver-plated surgical knife and a small bottle filled with cotton, and after a dispute between them, caused because she was afraid of her husband, she refused to go into the room where he had told her to go and look for a pocket-book; that seeing that he held his hand behind him she ran into the street and Bonelli ran after her, wherefore she ran into a restaurant but did not remain because a woman there told her that she was being pursued by a man; that she continued running through the streets while her husband shouted to her, "Stop or I will kill you," at the same time firing three shots; that hearing other shots and a voice crying, "Stop or I will shoot," she ran into the police station where her husband arrived later accompanied by a policeman and said to her "What a pity that I did not kill you! My nerves were not steady," using insulting language to her. After these happenings two letters passed between them, and while her letter contained words of forgiveness and pardon of her husband and promises to save him from criminal prosecution and soon leave him free by death, his letter to her was insulting.

Dr. Rivero, witness for the defendant, testified among other things that on the following day he examined the back

of the neck of the foregoing witness and noticed some pricks caused by a pointed instrument.

Another of the witnesses for the prosecution, policeman Ernesto Berller, saw on that night two persons running, one of whom was a woman who was crying for help, and when he went towards them he heard three revolver shots fired by the person behind the woman and aimed at her. He then cried to the man to halt and shot at and wounded him, and when the man stopped he discovered that it was Dr. Bonelli whom he conducted to the police station, where Bonelli, pointing to his wife, asked that he be allowed to kill that shameless woman (*sinvergüenza*).

Fidel Echevarría, Narciso Villafaña and Juan Moreira, all of whom are policemen, heard the shots and in the police station took from the defendant a revolver with three empty cartridges and heard him pronounce the words above mentioned.

The last witness for the prosecution, the proprietor of an eating house, testified that on that night María Luisa Piñero wanted to hide in the house of the witness because a man was after her, but went out again and that afterwards witness heard the shots.

The review of the testimony just made reveals the fact that, if it is true, the *fiscal* has fully proven his charges, but nevertheless, if the jury considered that the acts which transpired prior to the night the crime was committed had not been sufficiently proven, they could conclude that the assault in which the shooting took place was the outcome of a quarrel and dispute between the husband and wife in which they went into the street and, therefore, that his crime, which originated from a sudden quarrel and outburst of rage, was only an assault with the intent to commit manslaughter.

But even though the evidence does not show that the crime committed was an assault with intent to commit manslaughter, but with intent to commit murder, this could not be held to be an error prejudicial to the defendant because it bene-

fited him. *Thomas* v. *State,* 62 S. W. Rep., 919; *The People* v. *Figueroa,* 16 P. R. R., 356.

It cannot be held, therefore, that the verdict was contrary to the evidence nor that the evidence only sustained the theory of the defense. The evidence proved that the defendant committed a criminal act and although other evidence was introduced to show that it was committed in a moment of insanity, the jury decided the conflict in finding the defendant guilty, thereby disregarding the theory of the defense and deciding that Pablo M. Bonelli was sane and of sound mind when he perpetrated the crime for which he was convicted in view of the fact that the testimony of expert witnesses need not be accepted by them necessarily. *The People* v. *Sutton,* 17 P. R. R., 327.

The defendant states in his brief: ''The testimony of the deceased—that is to say, of the injured person—is not competent evidence to show the motive for a crime. This proposition is unquestionably included in the doctrine established in the case of *The People* v. *Shattuck,* 109 Cal., 673.'' In consequence thereof he maintains that María Luisa Piñero is not competent to testify as to what took place between her and Dr. Bonelli while they were alone in the house without eyewitnesses.

We have read the case cited, *The People* v. *Shattuck,* 109 Cal., 673, and although the court there held that the testimony of the deceased was not competent to show malice, deliberation or motive for the crime, it was because the testimony of the witness was simply hearsay evidence as the witness testified to acts committed by the deceased three or four days prior to the crime and was not introduced for the purpose of showing what transpired at the time of receiving a letter, but what took place subsequent thereto. That decision is not applicable to the present case and we know of no rule prohibiting the injured party from testifying as to things he has witnessed even though they may serve to show the motive of the crime.

The last part of the second assignment of error is that the court erred in refusing to instruct the jury that a verdict for simple assault might be found under the charge.

In regard to this particular we find that the defense proposed four written charges, the second being as follows:

"That the defendant may also be found guilty of simple assault or of assault without aggravating circumstances, if the jury believe that it was not proven that the·shots were fired at any particular person."

There is nothing in the·record to show whether said instructions were admitted or refused or which were given to the jury and which not, as provided for by section 266 of the Code of Criminal Procedure; but inasmuch as in the fourth ground of the motion for a new trial it was alleged that the court had refused three of them, it appears in the order refusing a new trial that the second instruction was refused, hence we may consider whether or not in doing so the court committed error.

The said instruction does not state the law correctly because if the evidence convinced the jury that the shots were not fired at any person, but were fired in the air without criminal intent, it would not follow necessarily that the defendant was guilty of the crime referred to in the instruction and the court was right in refusing it, because when a charge is erroneous even only in part  the court may refuse it because it is under no obligation to amend it. *People* v.· *Won Sing Long,* 84 Pac., 843; *State* v. *Nichols,* 50 La. Ann., 699; *Toops* v. *State,* 92 Ind., 13; *Laurence* v. *State,* 20 Tex. App., 356.

Furthermore, it would not have been proper for the court to give that instruction because the theory of the prosecution being assault with intent to commit murder, the only theory of the defense was that of the insanity of the accused.

For the foregoing reasons the two appeals taken by the

defendant must be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and del Toro concurred.