BORRER v. STATE. (No. 4644.)

(Court of Criminal Appeals of Texas. April 3, 1918. Rehearing Denied June 26, 1918.)

1. HOMICIDE ☞325—APPEAL—INSTRUCTIONS —WAIVER.

Where one indicted for murder makes no objection to the submission of the issue of manslaughter, he waives his right to complain thereof on appeal, in view of Act 33d Leg. c. 138 (Vernon's Ann. Code Cr. Proc. 1916, arts. 735, 737, 737a, 743), relating to instructions in criminal cases.

2. HOMICIDE ☞325—APPEAL—OBJECTIONS— CONVICTION OF LESSOR DEGREE.

Where one charged with murder failed to complain at trial of a charge on manslaughter, conviction of manslaughter will not be reversed, manslaughter being a grade of culpable homicide included in an indictment for murder by the express terms of Vernon's Ann. Code Cr. Proc. 1916, art. 772, and article 771, authorizing a conviction for any inferior degree of an offense.

3. CRIMINAL LAW ☞728(5)—ARGUMENT OF COUNSEL—REQUEST FOR INSTRUCTION.

Unless the remarks of counsel in argument are obviously of a nature to impair the rights of accused, they will not authorize a reversal, though improper, in the absence of a special charge requesting their withdrawal.

4. CRIMINAL LAW ☞723(2)—ARGUMENTS OF COUNSEL—INFLAMMATORY REMARKS.

In a trial for murder, a remark of the counsel for the state that the case reminded him of the first assassination, referring to the story of Cain and Abel, was not improper; the state's theory being that the homicide was an assassination.

5. CRIMINAL LAW ☞726 — ARGUMENT OF COUNSEL—RETALIATORY REMARKS.

In a murder trial, remark of the counsel for the state on argument that it was not he that was asking for the conviction of accused, because he was simply "the representative of the law-abiding citizenship of your county," was not reversible error, where it was invited by the statement of defendant's attorney that the prosecuting attorney was asking for the life and liberty of defendant.

6. CRIMINAL LAW ☞729 — ARGUMENT — CURE OF ERROR.

A remark of the state's counsel in a murder trial that he was not asking for defendant's conviction personally, but as a representative of the law-abiding citizens, was not so improper as to render it incapable of withdrawal by special charge.

7. CRIMINAL LAW ☞715 — ARGUMENT OF COUNSEL — USE OF SKETCH AND ILLUSTRATIONS.

In a prosecution for murder, it was not error to allow the state's counsel in his argument to draw a rough sketch of the roads, fences, fields, and pastures described by the witnesses, touching the scene of the homicide, the sketch not being handled by the jury, but merely used as illustration.

8. CRIMINAL LAW ☞784(3)—INSTRUCTIONS— CIRCUMSTANTIAL EVIDENCE.

In a murder trial, a charge on the law of circumstantial evidence is required only where the state relies on circumstantial evidence alone, and is not necessary where accused admits the homicide.

9. CRIMINAL LAW ☞726 — ARGUMENT OF COUNSEL—RETALIATORY STATEMENTS.

In a murder trial, where accused admitted the killing and defendant's attorney had discussed the law of circumstantial evidence, it was not prejudicial error for the state's attorney to state that defendant's counsel had stated the rule of circumstantial evidence correctly, but that he should not have made the argument because the court had not charged on circumstantial evidence.

10. CRIMINAL LAW ☞804(1)—INSTRUCTIONS— VERBAL AND WRITTEN INSTRUCTIONS.

In a murder trial, a verbal instruction that the jury must consider the case solely on the evidence and disregard arguments not based thereon, was not error, in the absence of a request for a written instruction.

11. CRIMINAL LAW ☞719(1)—ARGUMENT OF COUNSEL—ARGUMENTS NOT BASED ON EVIDENCE.

In a prosecution for murder by shooting, argument by the state's attorney that it was a matter of common knowledge that shots are often deflected from a straight course on striking an object was not error as improper comment as to a matter not supported by expert testimony.

12. CRIMINAL LAW ☞730(12)—ARGUMENT OF COUNSEL — PERSONAL REFERENCE TO ACCUSED.

In a prosecution for murder, a remark by the district attorney, while pointing to accused: "Look at his face. You have a right to look at his face. Gentlemen of the jury, that man is mad right now"—while improper, was not prejudicial error, in view of instruction to disregard it.

13. CRIMINAL LAW ☞719(1)—ARGUMENT OF COUNSEL—MATTERS NOT SUSTAINED BY EVIDENCE.

In a prosecution for murder, a remark of the district attorney that accused had not informed H., "one of the best men in the county," of the shooting, was not error, though there was no evidence as to the character of H.

14. WITNESSES ☞240(4) — LEADING QUESTIONS.

In a prosecution for murder, where deceased was barefooted, the question whether there were any barefoot tracks leading away from the cultivator with which deceased was working, although answerable by "Yes" or "No," was not leading, because it contained no suggestion as to what reply was sought.

15. WITNESSES ☞243—LEADING QUESTIONS— DISCRETION.

Where a witness is very old and not unfriendly to accused, it is not an abuse of discretion for the trial court to admit leading questions.

16. CRIMINAL LAW ☞447—PAROL EVIDENCE —IMPEACHING DOCUMENT.

In a prosecution for murder, where the evidence of decedent's wife given at inquest was reduced to writing, and signed by her some time afterwards, it was not error to permit her to testify that she made certain statements at the inquest, notwithstanding the written statement did not contain them; such statement not being conclusive as to her testimony at the inquest.

17. CRIMINAL LAW ☞656(5) — CONDUCT OF COURT—INSTRUCTIONS AS TO WITNESSES.

In a prosecution for murder, it was not reversible error, as indicating his opinion of the credibility of a witness, for the court to instruct

the sheriff to tell the witness, who was under the rule, to report to the court before leaving the courthouse; it not appearing that such instruction came to the jury's knowledge.

Appeal from District Court, Caldwell County; Frank S. Roberts, Judge.

Will Borrer was convicted of manslaughter, and he appeals. Affirmed.

E. B. Coopwood, of Lockhart, for appellant. E. B. Hendricks, Asst. Atty. Gen., for the State.

MORROW, J. On an indictment for murder appellant was convicted of manslaughter, with punishment assessed at confinement in the state penitentiary for two years.

[1, 2] Appellant made no objection to the court submitting the issue of manslaughter, and thereby waived his right to complain of the charge. C. C. P. arts. 735 to 743, Act 33d Leg. c. 138; Vernon's C. C. P. p. 525, note 61, and cases cited. He takes the position that the verdict is without support in the evidence, for the reason that the state's evidence tended to show assassination, appellant's evidence self-defense, neither tending to show manslaughter. Manslaughter is a grade of culpable homicide included in an indictment for murder by express terms of the statute (article 772, C. C. P.), and in article 771 of said Code it is declared that there may be a conviction for any inferior degree of an offense. In Powell's Case, 5 Tex. App. 235, the same point here made was determined against appellant's contention. Powell's Case has been followed in Chapman v. State, 53 S. W. 104; Templeton v. State, 5 Tex. App. 407; Thomas v. State, 43 Tex. Cr. R. 24, 62 S. W. 919, 96 Am. St. Rep. 834; Fuller v. State, 30 Tex. App. 563, 17 S. W. 1108. There have been conflicting views expressed in cases in which, after acquittal of murder, one is tried for manslaughter. Parker v. State, 22 Tex. App. 108, 3 S. W. 100; Cornelius v. State, 54 Tex. Cr. R. 178, 112 S. W. 1050. When one charged with murder is on his trial convicted of manslaughter and the charge on manslaughter uncomplained of, the court has uniformly refused to reverse on the ground that the evidence showed a higher grade of culpable homicide than manslaughter.

[3-6] A number of bills complain of improper argument. No special charges were filed requesting the withdrawal of the argument complained of. This being true, unless the remarks are obviously of a nature to impair the rights of appellant or improperly prejudice his case before the jury, they will not authorize a reversal, though improper. Branch's An. P. C. p. 204, § 362; Flores v. State, 198 S. W. 575; Roberts v. State, 67 Tex. Cr. R. 580, 150 S. W. 628; Clary v. State, 68 Tex. Cr. R. 290, 150 S. W. 919; Tweedle v. State, 29 Tex. App. 586, 16 S. W. 544; Pierson v. State, 18 Tex. App. 524; Williams v. State, 75 Tex. Cr. R. 56, 170 S.

W. 709; Thompson on Trials, § 698. When an argument is complained of as inflammatory the evidence and verdict will be looked to in passing on the question. Hart v. State, 57 Tex. Cr. R. 21, 121 S. W. 508; Davis v. State, 58 Tex. Cr. R. 461, 126 S. W. 863. The inflammatory remarks complained of in one instance consisted in the fact that counsel for the state stated that this case reminded him of the first assassination, referring to the biblical story of Cain and Abel. The state's evidence, if believed, would indicate that the homicide was an assassination, and for this reason the impropriety of the remarks is quite doubtful. The jury manifestly rejected the theory of assassination, however, and gave the appellant the lowest penalty fixed by law for the offense of manslaughter. In another one complaint is that the counsel for the state used the following argument:

"Attorney for the defendant has stated to you that I am asking for the liberty and life of this defendant. I wish to say to you that it is not I that is asking for his conviction, for I am simply the representative of the law-abiding citizenship of your county."

This appears to have been invited (see Branch's An. P. C. § 363), and, if improper, it cannot be said to be so obviously harmful as to render it incapable of withdrawal by special charge. House v. State, 19 Tex. App. 239; Beeson v. State, 60 Tex. Cr. R. 48, 130 S. W. 1006.

[7] The state's counsel in the course of his argument drew a rough sketch of the roads, fences, fields, and pastures described by the witnesses, touching the scene of the homicide. It contains no inflammatory matter, did not mark the place where the homicide occurred, but simply delineated the surroundings, including the locality of the house in which the deceased lived, which was shown by evidence, and, according to the qualification, was in accord with uncontradicted evidence with reference to these matters. It was not handled by the jury, but used only as an illustration in connection with the argument. Touching this we quote from Thompson on Trials, § 992, as follows:

"It seems to be a fair conclusion that it is the right of a party, in arguing to a jury, to use a map or plan which is not strictly evidence in the case, for the purpose of illustrating his argument and explaining to the jury the position which he assumes—just as the teacher makes use of the figures on a blackboard for the purpose of illustration." Rucker v. State, 7 Tex. App. 549.

[8] The appellant having admitted that he killed deceased, his case was not one requiring a charge on the law of circumstantial evidence. Such a charge is required only in cases where the state relies alone upon circumstantial evidence. Russell v. State, 38 Tex. Cr. R. 596, 44 S. W. 159; Branch's An. P. C. § 187. There was therefore no error in refusing appellant's special charge on that subject.

[9,10] It appears in this connection that

defendant's' counsel, in arguing the case before the jury, discussed the law of circumstantial evidence. Replying, counsel for the state said, in effect, that appellant's counsel had stated the rule of circumstantial evidence right, but that he should not have made the argument, because the court had not charged on circumstantial evidence. This argument is objected to. It seems to be a legitimate answer to the argument of appellant. This case, like practically all cases of homicide, has in it circumstances which were the proper subjects of comment by counsel, and from which the jury might draw proper inferences. This condition, however, did not make the case one of circumstantial evidence, and, if counsel for appellant left the impression upon the jury that it was such and the rule of circumstantial evidence applied to it, the state's counsel was within his rights in making reply thereto. The court, with reference to the argument, verbally told the jury that they must consider the case solely upon the evidence received from the witnesses and the law given in the charge, and disregard all argument of counsel for the state and defendant not based upon the testimony in the case and the law given by the court. This is complained of as a curtailment of the argument for appellant. The bill complaining of it is qualified by the court to the effect that the request was made for a verbal instruction which was given to the jury, and that this objection was made afterwards, and no written instruction requested. This verbal instruction apparently placed the argument within the proper scope, confining it to the evidence adduced on the trial and the law embodied in the court's charge. As qualified, we are unable to discern any error committed, as shown by the bill.

There were no eyewitnesses to the homicide except appellant. The theory of the state was that appellant, concealing himself in the corn, shot deceased while he was plowing in his field. It was a conceded fact that after he was shot deceased walked some distance towards his residence. He fell and died at a point about 150 yards, in an easterly direction from his plow and team. Thirteen buckshot fired from a gun struck him, entering the neck and breast between the chin and collar bone. They did not go through the body, but three of them came to the surface in his back about 18 inches below the place of entry. The widow of deceased testified that she heard a gun fired and her husband holler, ran out in the field, and met him walking in the turnrow towards his house, and he said that Will Borrer shot him; "that he was not doing anything when he was shot, but plowing along." There had been a previous difficulty, and deceased had sent word to appellant, complaining of his cattle getting in the field. Appellant claims to have gone to see deceased about the cattle,

and to have been abused by him, and that when the shot was fired deceased was advancing upon him with a hammer in his hand in a position to throw it, that he, appellant, was backing away, and told deceased he wanted no trouble, and that he stumbled and partly fell, and when he raised his gun to fire deceased threw the hammer. We take the following from his testimony:

"He had the hammer up, and, as he seen I was going to shoot, he ducked over that way (illustrating) and threw the hammer."

[11] The district attorney used, in substance, the following language in his argument: Defendant's attorneys say the killing must have occurred in the manner testified to by defendant, for the reason that the physical facts show that when the man was shot he must have been in a stooping position, because the shots entered in front between the neck and collar bone, and three of them came to the surface of the skin in the back 18 inches lower than the place of entrance. "This fact is of no importance, for you know and I know—in fact it is a fact of common knowledge—that shots are often deflected from a straight course and do not go in a direct line after striking any object." The complaint of this is that the course the shots would take was a matter of expert testimony, of which there was none introduced.

Whether the statement of the district attorney was accurate or not is one we will not undertake to decide. On the subject, however, see Balls v. State, 40 S. W. 802, wherein the court through Judge Hurt held that the range of a bullet was a fact that might be stated by a nonexpert. The location of the wound and the fact that three of the bullets appeared 18 inches below the point of entry may have been regarded as supporting appellant's statement that deceased ducked immediately before he was shot. It does not appear to be a fact of controlling importance nor entirely inconsistent with the theory of the state that at the time he was shot deceased was "plowing along." If appellant is correct in his assumption that the fact that shots are often deflected from a straight course after striking an object was one not properly the subject of comment in the absence of expert testimony on the subject, it was not such a transgression, considering the record, as might not have been cured by special charge. The court did charge the jury to disregard arguments not based on evidence. If more specific instructions were desired, a request for them should have been made.

[12] The district attorney, referring to appellant's contention and argument that the deceased was a dangerous man, pointed at appellant, shaking his finger, and said he was a quick-tempered man, easy to get mad. "Look at his face. You have a right to look at his face. Gentlemen of the jury, that man is mad right now." Appellant had testified

as a witness, and there was testimony that he had had a previous quarrel with deceased, and that he had threatened to kill him if he caught him on his land any more. Possibly this would have justified the argument that he was quick-tempered. The personal reference to him quoted, however, we think was improper. The bill shows, however, that the jury was instructed to disregard it; and, in view of this fact, in the light of decisions of this court collated in Branch's An. P. C. p. 205, we are of the opinion that the incident does not authorize a reversal. See, also, Morris v. State, 39 Tex. Cr. R. 371, 46 S. W. 253; Alexander v. State, 199 S. W. 294, and cases cited.

[13] Appellant admitted that after the homicide and on his way home he met several people, and failed to mention the matter to them. One of these was the witness by the name of Harrell who, with others, testified to the good reputation of deceased as a peaceful man. The prosecuting attorney, commenting upon the evidence of self-defense referred to the fact that appellant had not told his friends about it; that he failed to tell Harrell, "one of the best men in the county." To remark that Harrell was "one of the best men in the county" was out of the record. The law prohibits the county attorney from stating in argument facts not in evidence, and reversals have often resulted from the failure to observe this rule where the statement is of a material fact. Branch's An. P. C. § 205. Harrell had not testified to any incident connected with the homicide. He would in law be presumed to be a man of good reputation, in the absence of challenge by evidence. No specific instruction with reference to this particular matter was requested, and, as heretofore stated, the court gave a general instruction to disregard any argument not founded upon evidence.

[14] The state's theory was that appellant laid in wait and shot deceased while he was standing between the handles of his cultivator, and that after he was shot deceased, who was barefooted, left the cultivator, going in a westerly direction towards his house. Defendant's theory was that deceased had left his plow handles, walked on the west side of the cultivator, taking a hammer therefrom, and was advancing upon appellant with the hammer when he was shot. One of the witnesses who had examined the ground was asked if there were any barefoot tracks leading from the cultivator in a westerly direction. A question violating the rule against leading questions in this state is one which may be answered in the affirmative or negative, and which suggests the desired answer. This question could have been answered "Yes" or "No" but it contains no suggestion as to what reply was sought. Wells v. State, 65 Tex. Cr. R. 663, 145 S. W. 951; Ashlock v. State, 16 Tex. App. 21;

McKinney v. State, 63 Tex. Cr. R. 470, 140 S. W. 344; Branch's An. P. C. sec. 157.

[15] Other bills complain of leading questions asked the witness Reid. From the qualification of these bills it appears that the witness was very old, and not unfriendly to appellant. Assuming that the questions were leading, which is debatable, we think under the qualification that the bill fails to show an abuse of the sound discretion resting in the trial court to admit leading questions under certain circumstances. Navarro v. State, 24 Tex. App. 378, 6 S. W. 542; Fitzpatrick v. State, 37 Tex. Cr. R. 29, 38 S. W. 806; Branch's An. P. C. § 158.

[16] It appears that the wife of deceased testified at the inquest, and that the magistrate took notes of her testimony, and several days later reduced the evidence to writing, which she signed. On the trial of the case she testified: "My husband told me he was just plowing along when he was shot." To impeach her appellant introduced the written statement mentioned to show that it did not contain the expression quoted. Subsequently the state was permitted to prove by her that at the inquest trial she did make the statement. Objections were urged to her testimony last mentioned on various grounds, among them that, her testimony given at the inquest having been reduced to writing, the writing was the best evidence of its contents. It is quite true that the writing would be the best evidence of its contents. It was not the contents of the writing that was involved; it was whether the witness' statement on the trial was in conflict with her former statement, and whether by reason thereof her credibility was impeached. The writing under the circumstances was not conclusive as to what testimony she formerly gave. It was proof that it did not contain the statement in question, and the fact that it had been signed by her without the statement was a circumstance admitted against the state for the purpose of impeachment. It did not preclude, however, the state making proof that, while the statement was not included in the writing, she did, in fact, make it in her testimony, and the fault was in the magistrate in omitting it from the writing. Hyden v. State, 31 Tex. Cr. R. 403, 20 S. W. 764; Branch's An. P. C. § 173.

[17] The complaint of the court's conduct with reference to the witness Hardy, as stated in the accepted explanation to the bill, fails to show that the court did anything which would indicate to the jury his opinion or impression as to the credibility of the evidence given by said witness. Hardy was a witness for the defendant, and the court instructed the sheriff to tell the witness, who was under the rule, to report to the court before leaving the courthouse. It appearing nothing said to the sheriff or witness, or done in connection with them,

came to the knowledge of the jury, it could not have prejudiced appellant's rights. The law would not sanction any action by the court which would indicate to the jury his impression or opinion of the credibility of a witness. He is inhibited from doing so by statute, as has often been held by this court. Hughes v. State, 197 S. W. 215; Caruth v. State, 77 Tex. Cr. R. 150, 177 S. W. 973. This case is not brought within this rule. Steel v. State, 200 S. W. 381.

Failing to find error in the record justifying a reversal, the judgment of the lower court is affirmed.