### Jack Beasley v. The State.

#### No. 4329. Decided January 29, 1919.

**Aggravated Assault—Simple Assault—Former Jeopardy—Justice of the Peace.**

While defendant's plea of guilty of a simple assault would not bar his conviction of an aggravated assault, yet where the court rejected that part of the testimony of the prosecuting witness which would have sustained a conviction for aggravated assault, and only received such testimony as would sustain the conviction of simple assault, and defendant pleaded former jeopardy on a plea of guilty of simple assault before a justice of the peace, who by mistake entered a lower fine than the law demanded, his plea of former conviction should have been sustained, in the absence of fraud on the part of the defendant or the justice of the peace. Following Funderburk v. State, 64 S. W. Rep., 1059. Prendergast, Judge, dissenting.

Appeal from the County Court of Collingsworth. Tried below before the Hon. A. C. Nicholson.

Appeal from a conviction of simple assault; penalty, a fine of twenty dollars.

The opinion states the case.

*Templeton & Templeton,* for appellant.—Cited case in the opinion.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, Judge.—On April 20, 1916, the grand jury of Collingsworth County duly indicted appellant for an aggravated assault and battery alleged to have been committed upon H. S. Cook on April 18th. This, of course, included simple assault and battery.

The case was tried at the September term following before the County

Court without a jury.  Appellant waived a jury.  He plead not guilty and former jeopardy in that he was convicted of a simple assault for the same offense before a justice of the peace on April 18, 1916, and fined $1 and costs, which he had paid.  The trial judge heard all of the testimony as to the commission of the offense, and also as to appellant's plea of former jeopardy, and found him guilty of a simple assault and assessed a fine of $20.

As to the offense, the testimony of Mr. Cook, the party who was beaten up by appellant, was to the effect that he was horseback in his own pasture, about one-half mile from his residence, when appellant and a boy by the name of Stanley Whitson approached him.  The Whitson boy asked him about a bull that belonged to his father, which he claimed to be hunting, and that he told him that his father had found the bull that evening and he saw him driving it towards his home.  He further testified: "Then Jack Beasley stepped up to my horse and asked me to get down that he had something to show me.  He had a little book in his hand at that time, so I got down off of my horse.  He then asked me why I had been circulating reports on him, and why I had come over there to the schoolhouse, where he was teaching, to organize that Sunday school.  I told him I had not circulated any reports on him and that I was going to organize the Sunday school because the people wanted it.  He said I couldn't start a Sunday school over there as long as he was teaching there.  I told him he should not talk that way and that he was no part of a man and was not fit to teach school.  I then turned to say something to the Whitson boy and he reached hold of me and jerked me around and hit me in the face.  He then began to pound me in the face and hit me a number of licks before he knocked me down.  When he knocked me down, I got up as quickly as possible and he hit me again and knocked me down the second time, and when he did this he stumbled and fell on top of me, but fell on over me in an old cow trail.  I got on top of him but he kicked me off and then got up and hit me a number of times before he stopped beating me.  He beat me just as long as he wanted to and then quit.  The licks in my face blacked my eyes and caused my entire face to become blood-shotten.  My nose was broken and has never gotten back into shape, and I could not breathe good for several days.  Two of my front teeth were broken off and my face was in an awful shape for a number of days.  I am sixty-four years of age, and he is a young boy."  Appellant swore he was eighteen years old.

There was no material difference between said complaining witness' testimony and that of the Whitson boy and appellant as to the main facts of the beating of said Cook by appellant except they, in effect, say Cook struck the first lick.  We see no necessity of reciting the testimony of appellant and said Whitson boy even as to any other differences in their testimony from that of said Cook.  Appellant's own testimony would show he at the time committed an assault and battery on Cook.

As to the claimed former conviction, appellant testified he went over

to Claud Caperton's, the nearest justice of the peace to his home, that night to pay his fine; that Walter Bradley, his brother, and Mr. Day went with him. That Mr. Caperton was not at home, and they went on to where he was sitting up with a sick man and called him out. Appellant swore: "He came out and I told him of the case and just what had happened, stating that we had a fist fight and that I wanted to pay my fine. He called Mr. Bradley off and talked with him and came back and told me my fine would be $8.70, which I paid at once. I didn't know what the fine was and simply submitted my case to the justice and paid all he demanded. He said I was pleading guilty to simple assault and I thought that was what he would charge me with."

Said Caperton testified that he was justice of the peace of precinct No. 4 of said county, and had been for a number of years, and swore: "On the night of April 18, 1916, Jack Beasley came over to where I was sitting up with a sick man, about two miles from my home and office, and at about 11 o'clock p. m., and stated that he and Mr. Cook had had a fight. He detailed it to me and said it was a first fight and said he wanted to submit the case and pay the fine. I called Walter Bradley off to one side and he told me about it, and he informed me that it was a fist fight. I went back to the boy and told him I would charge him with a fist fight, a simple assault, and that his fine would be $8.70. He paid me the money, and the next morning when I went home I docketed the case and entered up the judgment." Appellant then introduced the judgment the justice of the peace had entered up, which, after the style, name, etc., was as follows: "On this the 18th day of April, 1916, came Jack Beasley and plead guilty to a simple assault (a fist fight) with the aforesaid H. S. Cook. The court assesses his fine at $1.00 and cost, amounting to $8.70, which was paid and the defendant discharged. Cost $8.70 paid. J. P. Capterton, J. P." The justice of the peace further testified that he thought the fine for simple assault was $1, and that if he had known it was $5, he would have assessed that amount; that he wanted to give the least fine, and he thought a dollar was correct; that he had always fined parties $1 for simple assault and had never heard it called in question until this time. On cross-examination he swore that he did not know the difference between a simple assault and an affray; that he simply wanted to fine the appellant the least fine. "If an affray is or was the least fine I could assess, that is what I wanted to fine him for. I intended that it should be the least fine. If an affray was the least fine, I intended it as an affray. I never thought much about the affair at the time. Jack Beasley told me that he and Stanley Whitson went over in the pasture and met Mr. Cook over there and that the difficulty took place over there. I do not know yet whether the difficulty took place in my precinct or not." It was admitted that the fight occurred in justice precinct No. 2 and not in No. 4. This was all the testimony as to the claimed former jeopardy and conviction.

It is clear and certain from this testimony that this claimed former

conviction was a mere farce and a fraud. The State was in reality no party thereto, and in no way thereby prosecuted him. Appellant alleged there was a complaint filed against him. He did not testify there was a complaint made and filed, nor did the justice of the peace so testify, nor did anyone else. None was introduced in evidence. The whole evidence excludes the idea that any was made or filed. No warrant for his arrest was shown. There was no constable or other officer present who could have arrested him. The evidence excludes the idea that any warrant was issued for his arrest or that he was arrested. The evidence shows no witness was sworn, and no evidence heard. The justice said appellant *stated* to him he and Cook had had a fist fight—even appellant was not sworn to testify and did not testify. That he called Bradley off to one side—away from appellant—and Bradley *informed* him it was a fist fight. Bradley was not sworn, and is shown not to have seen the fight, and could not have testified to anything about the facts. The court was not opened. The pretended case was not had at the justice of the peace office, but at a sick man's place two miles from his office and in the dead hours of the night—at a time and place to exclude the possibility of any officer being present to represent the State. The whole matter was secret so far as the State was concerned. No officer to represent the State was present. The justice of the peace had no power or authority to represent the State. His power and authority was merely to act as a judge and impartially to decide cases between the State and the accused when, and only when, the State should institute a case against appellant by proper complaint charging him with an offense. By his testimony the justice of the peace showed he was in reality representing the appellant and was very partial to him. He imposed a pretended fine of only $1, when the law prescribed $5 as the lowest fine he could have legally imposed, even if it had been a legal prosecution. The fact of appellant's haste, and that of the justice of the peace, too, clearly showed he anticipated a real prosecution by the State and complaining witness the next day, and hunted up the justice, away from his office where the law required him to hold court, at almost the midnight hour to attempt to prevent a real prosecution by the State.

It is clear and certain from all the authorities that appellant's actions and that of the said justice of the peace did not put him in jeopardy; that the said proceedings were void and in no way binding on the State and could not be taken advantage of by appellant to shield him from the prosecution and conviction for even a simple assault under the indictment and proceedings had before the grand jury and County Court in this cause.

The case of Warriner v. State, 3 Texas Crim. App., 104, was an instance where the appellant in that case sought by just such proceedings as were sought by appellant in this to circumvent the law and shield himself from proper prosecution by the State and conviction. This court in that case said:

"In support of the plea of former conviction the defendant read in

evidence a certified copy of the judgment of the justice of the peace, which shows that at a special term of the justice's court the following entry was made: 'Now on this day comes J. G. Warriner, defendant in the above case, and pleads guilty to a simple assault and battery on the body of B. A. Atwood, on the 31st day of January, A. D. 1876, and waives a jury and demands a trial; whereupon, after hearing a statement, it is the order and decree of the court that the State of Texas do have and recover as a fine the sum of two and fifty one-hundredths dollars, and all costs of suit; for which execution may issue.' Dated and signed by the justice of the peace.

"It was shown on the trial in the District Court that no affidavit had been filed or warrant of arrest issued, or any evidence heard before the justice of the peace, except as shown by the judgment above set out.

"The justice of the peace, in the absence of an affidavit and warrant, and of an examination of the case, could not oust the District Court of its jurisdiction to try the accused for an offense of higher grade than that to which the defendant had pleaded guilty; nor could the defendant, by waiving an examination into the circumstances under which the assault and battery was committed, screen himself by submitting to a nominal fine, and avoid the legitimate consequences of his acts according to the degree of aggravation or mitigation shown by the evidence. Norton v. State, 14 Texas, 387; Wilson v. State, 16 Texas, 247.

"The following quotation from Bishop's Criminal Law is applicable to the case under consideration:

"'But sometimes a man, conscious of guilt, procures a proceeding against himself, and suffers a slight punishment, thinking thereby to bar a prosecution carried on in good faith. In such a case, if the first prosecution is really managed by himself, either directly or through the agency of another, he is, while thus holding his fate in his own hand, in no jeopardy; the plaintiff state is no party in fact, but only such in name; the judge is imposed on, indeed, yet in point of law he adjudicates nothing. "All is a mere puppet-show, and every wire moved by the defendant himself." The judgment, therefore, is a nullity, and is no bar to a real prosecution.' This authority is supported by a number of decisions."

In the case of Watson v. State, 5 Texas Crim. App., 271, precisely the same attempt was made by the appellant in that case as was made by the appellant in this, to shield himself by claimed former conviction and jeopardy. This court therein cited and quoted from said Warriner case, and held said justice's pretended conviction was void and not binding on the State, because it did not thereby put that appellant in jeopardy.

The cases of Norton v. State, and especially of Wilson v. State, cited in said Warriner opinion, are also directly in point against appellant in this case. Those cases were decided by our Supreme Court when it had criminal jurisdiction. It is unnecessary to quote either of said decisions.

In 12 Cyc., 262, sub. 5, it is said: "The general rule is that a former conviction or acquittal procured by the fraud of the defendant is no bar to a subsequent prosecution. Thus where the accused hearing of a pending or threatened prosecution by indictment voluntarily or by a collusive arrest goes before a justice of the peace and is by him convicted of a misdemeanor he can not subsequently plead former jeopardy to an indictment for the same crime. If the prosecution was controlled and managed by the accused he has never been in jeopardy; and the proceedings being void the State may attack it collaterally." Authorities from the following States are cited and are in support of this text, towit: Alabama, Arkansas, Connecticut, Illinois, Indiana, Iowa, Kansas, Massachusetts, Minnesota, Missouri, New Hampshire, North Carolina, Tennessee, and the cases of Watson v. State and Warriner v. State, supra, from this State, Vermont, Virginia and Wisconsin. To the same effect is 8 R. C. L., sec. 127, p. 142, citing cases in point.

The case of Corbett v. State, 63 Texas Crim. Rep., 478, especially relied upon by appellant as authority in this case, is clearly not applicable, because in that case, and in the others cited by him, it was clearly and unquestionably shown that the State by its proper prosecuting officers investigated the whole case, and they instituted the criminal proceeding against the accused in those cases; in other words, that the State instituted that prosecution and prosecuted it to conviction, and, of course, under such circumstances, it was former jeopardy—a former conviction which bound the State. In this case, and the authorities cited herein, the State in reality was not a party and had nothing at all to do with the fictitious prosecution of appellant by himself of himself.

The trial judge in this case necessarily found against appellant on his plea of former jeopardy herein in not sustaining it and in finding him guilty and assessing his punishment.

The judgment is affirmed.

*Affirmed.*

MORROW, JUDGE, absent.

ON REHEARING.

January 29, 1919.

MORROW, JUDGE.—The appellant was indicted for an aggravated assault charged to have been committed upon H. S. Cook. It was alleged that appellant used his fist, being a robust person, and Cook a decrepit one; also that serious bodily injury was inflicted. He was convicted of a simple assault.

Cook testified that he was sixty-four years of age, and appellant was a young boy, and that he was no match for appellant in a fight; also that the licks inflicted produced black eyes and a broken nose. He denied making any effort to strike the appellant with a rock or with wire pliers. An eyewitness testified that his attention was first attracted by hearing a noise, and turning he saw Cook hitting appellant. Several blows were passed and Cook was knocked down; that appellant said he

would not hit him while he was down; that Cook then got up and picked up a large rock; that appellant then ran into him, and they fell together, rolling over, Cook getting on top with the rock in his hand; that in some way the rock was dropped; they got on their feet, and the fight ended. He said that nothing was used by appellant except his fist. He was wearing gloves and did not pull them off. There·was evidence introduced that appellant was weakened from a spell of measles, and that he was not as strong built a person as the prosecuting witness Cook, this evidence being from a doctor who attended appellant.

Appellant testified that he was eighteen years of age, weighed about 140 pounds; that he was weakly, and had suffered for years from lumbago. He said that Cook had been talking about him, and he approached him for an understanding or discussion of the matter; that he, appellant, took hold of Cook's shoulder and turned him around facing him, appellant, when Cook hit him; that a number of licks followed; Cook was knocked down; that he picked up a large rock and appellant ran and fell; that after he fell Cook got on top of him with the rock in his hand, cursing and saying, "I have you," and that he caught Cook's hand and the rock fell by the side of his head; that he managed to get on his feet, and they both got up, and were separated by Whitson, who was present. That the same evening he went to see the justice of the peace, Caperton. Not finding him at home, he went to where he was sitting up with a sick man. Appellant says he related what had happened, stating he had had a fist fight, and he wanted to pay a fine; that Caperton called another party who was present to one side and talked to him, and returning told appellant his fine would be $8.70, which he paid at once; that he simply submitted the case to the justice of the peace and paid all that was demanded, the justice stating that he was taking a plea of guilty to a simple assault.

Caperton verified the fact that appellant came to him at about 11 o'clock at night, where he was sitting up with a man who was sick, and stated that he and Cook had had a fist fight, and that he wanted to submit his case and pay a fine. Caperton said: "I called Walter Bradley off to one side and he told me about it and he informed me that it was a fist fight. I went back to the boy and told him I would charge him with a fist fight, a simple assault, and that his fine would be $8.70. He paid me the money and when I went home I docketed the case and entered up the judgment." The judgment entered was introduced and was a judgment finding the appellant guilty of a simple assault upon H. S. Cook, and assessing his fine at $1 and costs, amounting to $8.70, which the judgment recited had been paid. The justice said that he did not know that $5 was the lowest fine for simple assault; that he had been in the habit of entering $1 for that offense, but that he would be glad to reform and change the judgment with the permission of the court. He said he wanted to give the lowest fine, and had he known that he might have fined him $1 for an affray, he would have charged him with an affray and taken the plea for that offense.

On this state of facts the appellant interposed in due time a plea of former conviction of the offense of simple assault, and his complaint here is the failure of the court to sustain his plea. In our opinion the court should have sustained it. His plea of guilty of a simple assault would not bar his conviction of an aggravated assault. If on the trial the court had believed the statement of the prosecuting witness and entered a judgment finding him guilty of an aggravated assault on account of the serious bodily injury, the appellant would have had no just ground of complaint. The court, however, appears to have rejected that part of the prosecuting witness' testimony which would have sustained a conviction for aggravated assault, and to have accepted the statement of appellant and the eyewitness who testified, and upon that and the other testimony in the case to have found that the offense committed was not an aggravated assault but a simple assault only.

We find no suggestion of fraud on the part of appellant, nor for that matter on the part of the justice of the peace. As we understand the record, appellant's statement to the justice of the peace as to the facts was substantially like his testimony given upon the trial which, according to the judgment of the court, exculpated him so far as the charge of aggravated assault was involved. He having made a true statement to the justice of the peace, and the justice of the peace having stated that the charge would be a simple assault, and the amount necessary to discharge the judgment would be $8.70, without having told appellant the amount of the fine and costs separately, or that he was going to enter a fine of $1, the appellant would not be responsible for the fact that the justice of the peace had made a mistake as to the amount of the fine when he subsequently entered the judgment. The judgment entered adjudges the appellant guilty of a simple assault upon H. S. Cook. After he has discharged that judgment, the one appealed from finds him guilty of a simple assault for the same offense. He is thus twice convicted of the same offense, and will suffer the penalties for each of the convictions unless this judgment is reversed.

The case of Fundeburk v. State, 64 S. W. Rep., 1059, which was not referred to in the original opinion, we think, states principles and refers to decisions of this court which make it imperative that the motion for rehearing be granted, the affirmance set aside, and the cause reversed and remanded.

*Reversed and remanded.*