### JOE BRONSON V. THE STATE.

No. 293.   Decided January 12, 1910.

Rehearing denied April 13, 1910.

**1.—Burglary—Continuance—Testimony not Probably True—Discretion of Court.**

All applications for continuance are addressed to the sound discretion of the court, and they are subject to review on motion for new trial, and this court will not revise the action of the court below in refusing a new trial, where under article 597, White's Code Crim. Procedure, the court refuses a new trial for the reason that the absent testimony is probably not true; and the truth, materiality and sufficiency of such testimony are to be considered in connection with the evidence adduced at the trial.

**2.—Same—Good Character—Continuance.**

A continuance will not be granted for absent witnesses who are only expected to prove the good character of a defendant for honesty. Following Wright v. State, 37 Texas Crim. Rep., 627, and other cases.

**3.—Same—Evidence—Res Gestae—Confessions.**

Upon trial of burglary, there was no error in admitting in evidence the statement of the defendant shortly after he was shot down at the door of prosecuting witness' chicken house, stating how he and others were interrupted by the owner in the theft of his chickens, and how defendant and others effected the breaking; this testimony while not a confession (being made while under arrest) was res gestae. Following Powers v. State, 23 Texas Crim. App., 42.

**4.—Same—Variance—Name of Party Injured—Idem Sonans.**

Upon trial of burglary, where the indictment charged defendant with burglarizing the house of Darnell and the evidence showed that the name was spelled Donnell, but was commonly pronounced Darnell, the same was idem sonans.

**5.—Same—Charge of Court.**

Where, upon trial of burglary, the charge of the court was a correct enunciation of the law, there was no error.

Appeal from the Criminal District Court of Dallas.   Tried below before the Hon. Robert B. Seay.

Vol. LIX. Crim.—2.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Israel Dreeben* and *A. S. Baskett,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

McCORD, Judge.—This is an appeal from a conviction for burglary, the penalty being assessed at two years in the State penitentiary.

From the statement of facts it appears that on the night of February 12, 1909, and about 12 o'clock at night, the prosecuting witness, W. H. Darnell, was aroused by an unusual noise around his premises. He got up out of bed, secured a gun and went out to a chicken house, which said chicken house was in his back yard. This chicken house was a closed building with walls and was covered. There was a door through which ingress and egress was made to the house. When the prosecuting witness got out in the back yard and in about ten feet of the chicken house he saw a man standing right at the door of the chicken house, said door being opened (the witness recalled specifically that he had closed and locked the door the night before) and when the witness had gotten within ten feet of the house he fired upon the man in the door. The man fell and was unable to get away and was turned over to the officers, and afterwards proved to be the appellant in this case. There were two other parties with the appellant, who made their escape from the house by tearing off plates of iron sheeting on the back side of the house. After the appellant was shot down he made a statement to the prosecuting witness Darnell in which he said practically that he was a chicken thief, and that he followed that kind of business; that he, in company with the other two parties, went into the chicken house and that they had three sacks and that they had caught some chickens; that when the dog barked he suggested to his pals that they leave, and they replied, "No, let's get all the chickens," but the witness was too quick for him and that he shot before he, appellant, could shoot; that had they have had a moment more they would have secured all the chickens; that they had three sacks and that he, witness, would find, when he went into the chicken house, that two of the sacks had feathers in them and one a rooster; that witness afterwards went into the house and found the sacks as described by appellant. This is a sufficient statement of the facts to explain the issues raised on this appeal.

1. When the case was called for trial appellant made a motion for continuance for the want of the testimony of Jesse Lynes, Marshall Lynes and H. T. Batchelor, and the appellant expected to prove by the witness Batchelor his, appellant's, good character; that by the witnesses Jesse and Marshall Lynes he expected to show that on the morning of the day the alleged offense was committed he, appellant,

was in company with them and that on this night they were making a cut across some vacant property in the rear of Darnell's place and near the chicken house of the said Darnell, and that as they were passing along across said vacant property some parties came out and hailed them and shot at them and wounded this appellant; that there was a wire fence at the gate surrounding said chicken house, and that when appellant was so hailed and saw the gun in the hands of the party hailing him for his own protection he stepped into this vacant lot surrounding this chicken house and in going in there his sole intention was to seek a place of safety and not for the purpose of committing theft. He claimed that these witnesses lived in the city of Dallas, and that on the 7th day of April, 1909, he caused a subpoena to issue for said witnesses which was returned not found; and as to the witness Batchelor the return was that he was in San Antonio. The court overruled this application for a continuance to which action of the court the appellant duly excepted. It may be stated in passing that so far as the diligence was concerned it was proper. The court in his qualification to the bill of exceptions states: that the appellant was not entitled to a continuance for the witness Batchelor to prove general character, and, second, as to the witnesses Jesse and Marshall Lynes upon the presentation of said application; that he ordered an instanter attachment for said witnesses, but that the sheriff reported that no such witnesses could be found in the city of Dallas. The court further states, as a qualification to the bill, that in the light of the testimony adduced upon the trial the testimony of these witnesses was not probably true, and that no witnesses could be found who would state that they were with appellant on the night he was shot at Darnell's house. This motion for a continuance came before the court below on motion for new trial and was brought in review before the court below, and, unless, in the light of the record, the judge abused his discretion this court can not revise the action of the court below. Article 597, White's Code of Criminal Procedure, in setting out the qualifications and the requirements of an application for a continuance, says in subdivision 6 of said article: "Provided, that should an application for continuance be overruled, and the defendant convicted, if it appear upon the trial that the evidence of the witness or witnesses named in the application was of a material character, and that the facts set forth in said application were probably true, a new trial should be granted," etc. From the reading of statute it follows that all applications for continuance are addressed to the sound discretion of the court, and they are subject to review on motion for new trial and that this court will not revise the action of the court below in refusing a new trial upon that ground unless it clearly appears that there was an abuse of legal discretion on the part of the trial court; and this discretion, which is vested in the court below, is a very broad one, qualified only by the requirement that it be a sound discretion. This implies that the action of the court upon

the application, even when it is first presented, should not be an arbitrary determination of its merits and sufficiency by the trial court, but the result of a sound discretion, which, of course, in passing upon an application prior to the trial can not be affected by the evidence which is afterwards adduced at the trial forced upon the defendant by the refusal of the continuance. But when, after the trial and conviction of the defendant, the court is called by the motion for new trial to reconsider the grounds assigned in the application for a continuance, the truth, materiality and sufficiency of its allegations are to be considered in connection with the evidence adduced at the trial, and are not to be considered anterior to the trial. See Miller v. State, 18 Texas Crim. App., 232; Harris v. State, 18 Texas Crim. App., 287; Irvine v. State, 20 Texas Crim. App., 12; McAdams v. State, 24 Texas Crim. App., 86. We, therefore, hold that the court, who had the witnesses before him, who presided at the trial, who heard the testimony and who passed upon this application for a continuance, and the review of same after the trial on motion for new trial, did not abuse his discretion and that his finding that the testimony which was expected to be proved was not probably true, was not such an abuse of discretion as authorizes this court to disturb the verdict upon this ground; and we might say that in the light of the record in this case and the testimony adduced upon the trial, the evidence proposed to be established by these absent witnesses was not only not probably true, but that the same was unreasonable and unnatural. As to the witness Batchelor, it has been decided by this court in a number of cases that on a trial for theft, a continuance will not be granted for absent witnesses who are only expected to prove the good character of a defendant for honesty. Wright v. State, 37 Texas Cr. Rep., 627; Parks v. State, 35 Texas Cr. Rep., 378; Benson v. State, 38 Texas Cr. Rep., 487. This disposes of the motion for new trial.

2. Counsel reserved a bill of exceptions to the action of the court in permitting the State to prove by the prosecuting witness, W. H. Darnell, and the other witnesses offered by the State, a statement made by the appellant at the time he was shot down at the door of the prosecuting witness' chicken house, and over the objections of appellant, that he, appellant, cried out for mercy, asked them to take him to the hospital because he was going to die; that the prosecuting witness stood over him with a pistol in his hand and guarded the door to prevent the escape of the other two parties who were in the chicken house; that appellant was helpless and was down on the ground and that the prosecuting witness would not have allowed him to escape if he could have prevented it; that when his, witness', neighbors came he assisted in carrying the appellant to his gallery, some ten or fifteen feet distant, and placed him on the gallery, and that the appellant there told him about himself and his pals going into his chicken house, breaking off the lock and while in the act of stealing the chickens they were interrupted by the barking of the dog and squawking of one

of the chickens; that at that time they had as many as a half dozen of the chickens caught and would have gotten them all and got away; that he, appellant, had followed that business for some time, and that when interrupted he started to escape, but his pals persisted in remaining, and that had the prosecuting witness not been as quick as he was, he, appellant, would have shot him; that he, witness, would find three sacks in the chicken house, two of them with feathers in them and one of them with a rooster, and that the prosecuting witness, subsequent to this statement, went to the chicken house and found the sacks as stated by the appellant. This testimony, as stated above, was objected to on the ground that it was made while under arrest and no warning given. The court admitted the testimony on the ground that the appellant was not under arrest; second, that the statement was res gestae, and, third, because the facts were found as stated by the appellant. We think there is no question in this case that appellant was under arrest at the time. In fact, he was in the actual custody of the prosecuting witness; he could not get away because he was shot down, and the prosecuting witness stated that he would not have permitted him to escape. Where a party is in actual custody, whether it be by an officer or other person, this will exclude a confession made without caution or warning. We, however, hold that this testimony was admissible as a res gestae statement, and if it is res gestae, then the evidence was admissible, notwithstanding it might not be admissible as a confession or admission, because res gestae is independent or superior to and can not be restricted or limited to the rules relating to admissions or confessions made after arrest. Mr. Wharton says: "Res gestae are events speaking for themselves through the instinctive words and acts of participants, not the words and acts of participants when relating the events. . . . Nor are there any limits of time within which the res gestae can be arbitrarily confined. They vary in fact with each particular case. . . . They need not be coincident as to time if they are generated by an excited feeling which extends without break or let down from the moment of the event they illustrate. In other words, they must stand in immediate causal relation to the act and become part either of the action immediately producing it, or of action which it immediately produces. Incidents which are thus immediately and unconsciously associated with an act, whether such incidents are doings or declarations, become in this way evidence of the character of the act." And again Mr. Wharton says: "But we must remember that continuousness can not always be measured by time. Instinctiveness is the requisite, and when this obtains the declarations are admissible." See Wharton's Criminal Evidence, secs. 262-264 and 691. In the case of Powers v. State, 23 Texas Crim. App., 42, the following was held to be a res gestae statement: "When within thirty or forty feet of defendant, Coggin says: 'I told him to hold up; if he did not I would kill him. I told him this two or three times; about the second or

third time I told him this he stopped and I held him up.' Witness was asked by the prosecution, 'What then occurred?' and answered, 'I told him he must go back to town then with me; that he had killed Eubank.' Counsel for the State then asked witness, 'What did Powers say in reply?' to which defendant's counsel objected because defendant was under arrest, and because no predicate had been laid as required by the statute for the admission of confessions of a defendant made under arrest. These objections were overruled, and in answer to the question the witness said: 'Defendant said, 'No, I have not killed him.' I said, 'Yes, you have,' and defendant replied, 'If I have killed him nobody saw me.' '" This court held that this testimony was not admissible as a confession, and that while it may have been made in fear of life and was not voluntary, yet that the same was clearly admissible as res gestae and under the authority of Powers v. State, supra, we hold that this testimony was admissible as res gestae, and that the court below did not err in allowing the State to prove the statements of appellant at the time he was shot down. They were not only coextensive with the crime committed; following it so closely and being practically at the spot where the shooting was, the manner of the statement shows such instinctiveness that the statement made can not be regarded other than the facts, speaking through the mouth of the appellant. It may be further stated that all these statements were made within a very short time after appellant was shot down.

3. Counsel for appellant contends that a new trial should have been granted because of a variance between the allegations and the proof. The indictment charged appellant with burglarizing the house of Darnell. When Darnell was placed upon the stand he said the name was spelled "Donnell," but that it was commonly pronounced "Darnell." Courts will not hold that words of similar sound are not idem sonans because they are not spelled alike, but if they are similar in pronunciation, or whether when spelled out it sounds differently from the way it is generally pronounced, this will not authorize the court to declare the same a variance.

4. Some complaints are made in the motion for new trial of the charge of the court. We have examined the charge of the court and we find it to be a correct enunciation of the law. Believing that no error was committed by the court below, the judgment is affirmed.

*Affirmed.*

[Rehearing denied April 13, 1910.—Reporter.]