## HUNT WATSON v. THE STATE.

### No. 6490.   Decided January 18, 1922.

**1.—Burglary—Bill of Exceptions—Questions and Answers—Juvenile Law.**

Where the bill of exceptions to the question of juvenility was in question and answer form, the same could not be considered on appeal. However, if the court considers the fragmentary part of the bill not subject to the objection pointed out, the evidence does not sustain the contention that the officers of the court purposely continued the case until after defendant became seventeen years of age in order to deprive him of his rights under the juvenile law.

**2.—Same—Speedy Trial—Unreasonable Delay—Statutes Construed.**

Under the provisions of the Constitution, Article 1, Section 10, the accused shall have a speedy, public trial, and if such unreasonable delay as the defendant suggested were attempted, he would not be without remedy; but it does not occur to this court that such an attempt was made in the instant case; and if at the time of the trial he had passed the age limit, the purpose of the law, as written has been accomplished.   Following McLaren v. State, 85 Texas Crim. Rep., 31.

**3.—Same—Evidence—Convict—Pardon—Practice in Trial Court.**

Where, upon trial of burglary, the conviction depended largely upon the testimony of an accomplice, and when the State offered his testimony the defendant introduced judgments of conviction against him, and the State, to show his competency as a witness, introduced a pardon from the Governor, to which defendant objected because the pardon failed to show that it covered a certain conviction in another county, and that when the witness was permitted to swear that he was convicted only one time in said county, stating the date, and it was manifest that this was the conviction for which he had been pardoned there was no error.   Distinguishing Miller v. State, 46 Texas Crim. Rep., 59, and other cases.

**4.—Same—Pardon—Evidence—Delivery of Pardon—Practice in Trial Court.**

Where the defendant objected to the pardon because same had never been delivered to, or accepted by the witness, and thereupon the county attorney asked the witness if he accepted the pardon, and received an affirmative answer, there was no reversible error.   Following Hunnicut v. State, 18 Texas Crim. App., 498.

**5.—Same—Accomplice—Corroboration—Practice in Trial Court.**

Where the accomplice testified to a complete case, and the movements of all the parties, both before and after the burglary, there was no error in permitting the State to introduce witnesses supporting him in many of the details related by him.

**6.—Same—Evidence—Harmless Error—Practice in Trial Court.**

Upon trial of burglary, where the State was permitted to introduce certain testimony, that before the night of the burglary, certain men came to his hotel and stopped, etc., and it was shown that defendant was not present at the time, the same should not have been admitted in evidence, but in as much that it was harmless error, there was no reversible error.

**7.—Same—Argument of Counsel—Requested Charge.**

When the defendant's counsel provokes improper remarks to be made by counsel for the State, the defendant will not be heard to complain of

such remarks. Following Norris v. State, 32 Texas Crim. Rep., 172, and other cases; besides, the jury was instructed not to consider State's counsel's remarks.

### 8.—Same—Accomplice Corroboration—Charge of Court.

It is impracticable to lay down a form of charge on accomplice testimony for general use, because facts arise wherein it would be inappropriate. However, where the charge submitted was a copy of one sanctioned by this court, and was applicable to the facts in the case, there was no reversible error. Following Campbell v. State, 67 Texas Crim. Rep., 301, and other cases.

### 9.—Same—Requested Charge—Corroboration.

Where defendant's requested charge, on the subject of corroboration was in effect a peremptory instruction to find appellant not guilty, there was no error in refusing same.

### 10.—Same—Sufficiency of the Evidence—Corroboration.

Where, upon trial of burglary, the corroboration of the accomplice was sufficient to meet the requirements of the law, and the evidence was sufficient to sustain the conviction, there was no reversible error.

Appeal from the District Court of Falls. Tried below before the Honorable Prentice Oltorf.

Appeal from a conviction of burglary; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*Nat Llewellyn,* for appellant.—On question of charge of accomplice: Baggett v. State, 151 S. W. Rep., 560; Crawford v. State, 34 id., 927, and cases cited in opinion.

*R. G. Storey,* Assistant Attorney General, for the State.—On question of accomplice testimony: Adams v. State, 141 S. W. Rep., 527, and cases cited in opinion.

HAWKINS, JUDGE.—Conviction is for burglary. Punishment two years in the penitentiary.

The indictment charging accused with the offense of burglary was returned into court on June 21, 1920. On October 4th, 1920, appellant filed his affidavit setting up that he was born December 4, 1903, and was therefore under seventeen years of age, and asking that the felony prosecution be dismissed. The record shows no action by the court on the motion at that time. On January 31, 1921, appellant filed another affidavit, referring to the former one filed by him, alleging in the latter "that the county attorney postponed said cause and refused to try same, and did it with the deliberate purpose of waiting until after the defendant became seventeen years of age; that defendant was at all times ready, willing and anxious to be tried on said motion."

90 T. C.—37

No order appears to have been made on the second affidavit. When the case was called for trial on April 4, 1921, appellant filed another affidavit alleging that he was born November 4, 1903, and again charging that the officers purposely continued the case until after he became 17 in order to deprive him of his rights under the juvenile law. (Art. 1195, C. C. P.) Testimony was heard by the court at this time, and is brought forward in a bill of exceptions covering twenty-five pages of the transcript, and consist almost entirely of questions and answers. The bill in this form cannot be considered in its entirety. See Art. 744, C. C. P.; Art. 2059, R. C.; Vernon's C. C. P., page 537, note 21; Jetty v. State, No. 6407, 90 Texas Crim. Rep., 346 (opinion November 30, 1921); Parker v. State, No. 6447 (opinion December 7, 1921); Hornsby v. State, and Johnson v. State (both opinions December 14, 1921); McDaniel v. State, No. 6443 (opinion December 1, 1921). If we consider the fragmentary part of the bill not subject to the objection pointed out, the evidence does not sustain the contention, but indicates that during a part of the time appellant was in jail in other counties. The hearing on the motion could not have proceeded in his absence. While appellant was in jail in Falls County the court appears to have been engaged in the trial of some murder cases. The provision of the Constitution, Article 1, Section 10, providing: "In all criminal prosecutions, the accused shall have a speedy public trial," was intended to prevent the government from oppressing the citizen by holding criminal prosecutions suspended over him for an indefinite time, and to prevent delays in the customary administration of justice by imposing upon the judicial tribunals an obligation to proceed with reasonable dispatch in the trial of criminal accusations. (Ex Parte Thurman, 26 Texas 710; Harris' Constitution of Texas, page 78.) If such unreasonable delays as suggested above were attempted an accused would not be without remedy. But it does not occur to us such attempt was made in the instant case Two affidavits were filed, the first giving accused's birth as December 4, 1903, the second as November 4, 1903. If the first was correct as to date, then only ten months elapsed from the date of filing until he became seventeen. If the second gave the correct date, the only one month elapsed from the time the first was filed until his seventeenth birthday. The juvenile law was designed, not that one should escape punishment for crime, but to prevent one under seventeen at the time of trial from going to the penitentiary. McLaren v. State, 85 Texas Crim. Rep., 31, 209 S. W. Rep., 669. If at the time of trial he has passed the age limit the purpose of the law, as written, has been accomplished. We would be unwilling to give our approval to a course of delay for the sole purpose of depriving an accused of his privilege under the juvenile law, yet where the facts show him to have been more than seventeen when tried, we would hesitate to give our unqualified assent to the broad proposition that the prosecution should be dismissed if

continuance was brought about by the State until such time as accused became more than seventeen years of age.

When the State offered Charley Chambers as a witness, in order to show his incompetency appellant introduced three judgments of conviction against him; two from Dallas County, both at the January term of court in 1910; one from Ellis County on April 11, 1910, at the February term of court. Punishment in each of these convictions was two years in the penitentiary, all being cumulative. To show his competency had been restored the State introduced the following pardon:

## PROCLAMATION BY THE GOVERNOR OF THE STATE OF TEXAS.

*To all to Whom These Presents Shall Come*:

Whereas, at the January term, A. D., 1910, in the District Court of Dallas County, State of Texas, Charley Chambers was convicted, charged with the offense of burglary and his punishment assessed at two years confinement in the state penitentiary; and,

Whereas, at said term of said court in said Dallas County, State of Texas, the said Charley Chambrs was convictd on a second charge of burglary and his punishment assessed at two years confinement in the state penitentiary; and,

Whereas,, at the February term of the District Court of Ellis County, State of Texas, the said Charley Chambers was convicted of the offense of burglary and his punishment assessed at two years confinement in the state penitentiary; and

Whereas, the said Charley Chambers having served his full term of sentence in the state penitentiary in all three cases as aforesaid, was discharged therefrom on the 12th day of April, 1916, for the reason that the county attorney, Homer Jennings, of Falls County, Texas, and the county attorney, G. O. Crisp of Kaufman County, Texas, each advised that the said Charley Chambers was wanted in the respective counties mentioned to testify in several cases now pending in the courts of these counties. And further that the said Charley Chambers is now wanted to testify in a criminal case now pending in Falls County, State of Texas, wherein he is a material witness in said cause.

Now, therefore, I, Pat M. Neff, Governor of Texas, do by virtue of the authority vested in me by the Constitution and Laws of this State, hereby, for the reasons specified, now on file in the Office of the Secretary of State, grant the said Charley Chambers a full pardon and restore him to full citizenship and the right of suffrage and the right to testify in court

PROCLAMATION BY THE GOVERNOR OF THE STATE OF TEXAS.

*To All to Whom These Presents Shall Come*:

In Testimony Whereof, I have hereunto signed my name and caused the Seal of the State to be hereon impressed, at the City of Austin, this the 5th day of April, A. D., 1921.

PAT M. NEFF, .
Governor of Texas.

(L. S.)
By The Governor:
S. L. STAPLES, Secretary of State.

Objection was urged to the witness testifying because the pardon failed to show that it covered the conviction in Ellis County, there being omission to state the year of conviction as 1910. Over objection, Chambers was permitted to swear on his *voir dire* examination that he was convicted only one time in Ellis County, and that this occurred in April, 1910. It is made manifest by the certificate of the clerk to this judgment of conviction in April that it occurred during the February term, 1910.

The case of Miller v. State, 46 Texas Crim. Rep., 59, 79 S. W. Rep., 567, cited by appellant does not, we think, support his proposition. The question there discussed is not like the one now before us. But in the case of Hunnicut v. State, 18 Texas Crim. App., 498, the identical question was presented. The pardon there stated incorrectly the date of conviction. The pardon was admitted, and witness, over objection, was permitted to testify on his *voir dire* examination that he had never been convicted, but the one time. (Art. 792, C. C. P.) The action of the trial court was sustained. In Thompson v. United States, 47 L. R. A. (N. S.), 206, the question was raised that the pardon failed to identify the witness as the one to whom issued, and the witness was permitted to testify that he had received the pardon and accepted it, and this was held sufficient identification. Reference to the pardon shows its purpose was to restore the competency of the witness, and the record presents no error in the particulars complained of.

Objection was also urged to the introduction of the pardon because same had never been delivered to or accepted by the witness (Bill No. 3.) The pardon had been sent direct to the county attorney who had received it on the morning of the trial. Chambers had never seen it, or had possession of it, and had nothing to do with securing it. When the objection was made the county attorney asked the witness if he accepted the pardon, and received an affirmative answer. The Hunnicut case, *supra*, is authority for the correctness of the court's action in holding the acceptance sufficient.

Charley Chambers, an accomplice, testified to a complete case, being to the effect that he, Watson, Gathright and Class burglarized the depot at Marlin on Friday night, the 28th of May, 1920, taking therefrom the safe which they carried in an automobile some two miles from town, broke it open and appropriated the money found. He testified to the movements of all the parties during the day before, at the time of, and after the burglary until they reached Houston on Sunday morning, where they were arrested. We set out the substance of enough of his testimony to make clear the matters discussed with reference to bills of exceptions 5, 6, 7, 9 and 10. Chambers testified that he and the other three mentioned went from Temple to Marlin with the express purpose of committing the burglary; that while on the way, near Eddy, they run into another car and broke the bumper off their car, and had the bumper taken off at Eddy; that he had seen at court both the man whose car they ran into, and the man who took the bumper off their own car. He also testified that when they went to the depot to commit the burglary Watson sat in the car, while he and the other two got out to get the safe; that a negro and a large man, as large as appellant's attorney, was there, and that he (Chambers) Gathright and Class sat on a truck near the depot until everybody left, when the three of them got the safe, put it in the car and, with Watson driving, went out about two miles from town, then down a lane a short piece, where the safe was thrown out; that Watson drove the car back to the main road and headed it toward Waco while Chambers and the other two broke the safe open and took the money; that about the time the three of them reached the car after having rifled the safe, another car going towards Marlin, with two men in it, stopped and one of the asked if they (the boys) needed any help, and upon being told "no" drove on. Chambers also testified that after the burglary they went to Waco, from there to Austin, arriving there about three or four o'clock in the morning; that they slept until about eleven o'clock, when the four of them left in the car, went through Brenham and Giddings, getting supper at the latter place; that he had seen the man around the courthouse with whom they had supper at Giddings. The State, over objection, then introduced witnesses to support Chambers on many of the details related by him, as shown in bills of exceptions Nos. 6, 10, 9 and 5.

We have been unable to discover any error committed in the reception of the evidence complained of. It was permissible to show the movements of all the parties the day before the burglary and while on their way to the place where committed, during the burglary, and after it was effected, and their flight. It was also proper for the State to show the association of the parties both before and after the burglary. Chambers, a self-confessed accomplice, testified in detail to these matters. Being an accomplice, he testified under a cloud. It was indispensable that the State corroborate him by evidence tending to connect the accused with the commission of the offense; but it was

not improper for the State to support him with the testimony complained of bearing upon the truth of his evidence on matters prior to and subsequent to the offense. This is also true with reference to Chambers' testimony wherein he was permitted to state over objection (Bill No. 2) that "he had seen in the courthouse a man with whom he ate supper," the bill showing it was the witness Markisch to whom he referred.

Clyde Waters testified over objection (Bills No. 7 and 8) "that on Thursday night before the alleged burglary four men came to his hotel in Temple and stopped; that he got some medicine for one of them whose finger was cut; the objection being that it was not shown that appellant was at the hotel on that occasion. We fail to find any evidence identifying the men as appellant and his three companions. It is not apparent to us how this testimony aided the State. The statement of the witness should not have been permitted, but we fail to find anything of a hurtful character making necessary the reversal of the case. This seems to be an instance where the admission of testimony that does not help the State cannot injure the defendant. (See note under Sec. 96, page 61, Branch's Ann. P. C., and authorities there cited.)

Complaint is made (bill of exception No. 13) that the county attorney, in the closing argument for the State, said to the jury that "he did not allow the witness Charley Chambers to turn State's evidence until after he tried to get the defendant, Hunt Watson, to do so." Objection was urged to said argument, and a special charge requested upon the subject, which was not given, but the court, in lieu thereof, gave the following instruction:

"You are charged that there is no evidence in the record regarding any act or offer of the county attorney with reference to Hunt Watson turning State's evidence, and you will disregard the remark of said county attorney in that connection and not consider same for any purpose."

The bill is allowed with the following explanation from the trial judge:

"It was in evidence that Charley Chambers, Hunt Watson and two others committed the offense. Charley Chambers turned State's evidence and testified for the State. It was known that he was considerably older than Watson. Defendant's counsel in argument criticised the county attorney for permitting Chambers to turn State's evidence instead of Watson, and said that the latter being the younger, it was a shame that the county attorney had not let him turn State's evidence and send the criminal Chambers to the penitentiary. It was in reply to this criticism and clear inference that Watson would have turned State's evidence if the county attorney had let him, that the latter made the statement in argument complained of in this bill; notwithstanding such facts the court gave a charge on the incident as shown in the bill."

If appellant's attorney used the language attributed to him by the court in his qualification to the bill there can be no doubt that he was leaving with the jury the inference that Watson would have turned State's evidence if he had been permitted to do so by the county attorney. Judge Davidson, writing in Sinclair v. State, 35 Texas Crim. Rep., 131, says:

"When a defendant's counsel provokes improper remarks to be made by counsel for the State, the defendant will not be heard to complain of such remarks."

The following cases are cited in the Sinclair opinion, some of which directly support the foregoing announcement. Baker v. State, 4 Texas Crim. App., 223; Williams v. State, 24 Texas Crim. App., 33; House v. State, 19 Texas Crim. App., 227; Mayes v. State, 33 Texas Crim. Rep., 33, Norris v. State, 32 Texas Crim. Rep., 172. We, therefore, conclude that no reversible error would have been presented, even had the court declined to charge the jury not to consider the county attorney's remarks, and surely no error of a serious character can be contemplated in view of the charge given.

Some complaint is made at the charge on corroboration of an accomplice. The one given is a copy of the charge in Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W., Rep., 583. The charge has been approved in many cases, and sometimes criticised. It is not appropriate under all circumstances. Where appropriate we are of opinion the charges approved in Brown v. State, 57 Texas Crim. Rep., 509, 124 S. W. Rep., 101, and in Oates v. State, 67 Texas Crim. Rep., 496, are better, and more in line with the suggestion in Stanfield v. State, 84 Texas Crim. Rep., 437, 208 S. W. Rep., 538. It is impracticable to lay down a form of charge for general use because facts arise wherein it would be inappropriate. We are unable to perceive, however, wherein the charge given could have been hurtful in the instant case. The burglary was established by testimony other than the accomplice. His testimony does more than connect appellant with the offense. It makes a complete case against accused of guilty participation in its commission, and the corroborative evidence tended to connect him with the commission.

Appellant requested a special charge on the subject of corroboration, and urges error because of its refusal. (Bill No. 14.) We are of the opinion that if the court had given the requested charge it would have been in effect a peremptory instruction to find appellant not guilty. After embracing certain matters relative to corroboration, which, if not on the weight of the testimony, approach very near thereto, the charge seems to be complete and is closed with a period; then follows this as the concluding sentence, disconnected entirely from other portions. "You must acquit the defendant." Thinking perhaps a mistake had been made in copying the charge in the bill of exceptions as it appears in the record, we have examined the charge as set out in

another place in the transcript, and find it appears in the same condition. The court properly declined to give the special charge.

The corroboration of the accomplice was sufficient to meet the requirements of the law. Sheriff Moore saw and recognized appellant at the wheel of the car which was standing at the mouth of the lane near where the safe was broken open. He saw three other parties approach the car from the lane. For some reason he took the number of the car and made a memorandum of it. He next saw the car in Brenham. There can be no question but that it was the car which was used at the time of the burglary, and in which the party escaped. This evidence tended to connect the appellant with the burglary.

Finding no reversible errors in the record, the judgment must be affirmed.

*Affirmed.*