D. R. CALLOWAY v. THE STATE.

No. 6699. Decided April 26, 1922.

Rehearing denied November 1, 1922.

**1.—Murder—Manslaughter—Charge of Court—Adequate Cause.**

Where, upon trial and a conviction of murder, the defendant complained because the court declined to submit the issue of manslaughter to the jury, this court after a careful consideration of all the facts is of the opinion that nothing occurred at the time of the killing which, by itself, would have been adequate cause, and there was, therefore, no reversible error in the court's refusal to submit a charge on manslaughter.

**2.—Same—Evidence—Res Gestae—Declaration of Defendant.**

Where the State's witness testified over objection of defendant that he went to the place of the killing, shortly thereafter, talked to the defendant, helped to pick him up and put him on a bed; that defendant was

suffering and said that he and his wife, the deceased, had had some trouble, that he (defendant) had slapped her, and knew hell would be to pay, and he would finish up the job, etc., the same was *res gestae* and admissible and there was no reversible error.

### 3.—Same—Arrest—Insanity—Declaration of Defendant—Rule Stated.

It was formerly the rule in this State that all acts and conduct of accused while under arrest, might be given in evidence against him on the issue of insanity regardless of whether he had been warned prior to said acts and conduct, but this rule has been modified by the decision of this court, and it is now held if the confession or statement was of a criminative character in connection with the case for which accused was being tried, that such acts and declarations could not be used in the absense of a proper warning. Following Plummer v. State, 86 Texas Crim. Rep., 487, and other cases. However, the above statement of defendant was *res gestae* and admissible.

### 4.—Same—Withdrawal of Illegal Evidence—Practice in Trial Court.

Where a witness had testified to facts favorable to the defendant, and on cross-examination in response to a question from the district attorney, she said deceased "was one of the sweetest girls she ever knew" and the court temporarily overruled an objection thereto but shortly thereafter upon his own motion withdrew said statement of the witness from the jury, the same cured the error in its admission, and there was no reversible error.

### 5.—Same—Evidence—Letter—Husband and Wife—Motive.

Where, upon trial of murder, the defendant was charged with having killed his wife, there was no error in admitting in evidence a certain letter written by the defendant to the deceased shortly before, which contains some vague threats against the latter on the question of motive of the defendant, and the letter was, therefore, taken out of the class of privileged communications between husband and wife, and there was no error. Following Sargent v. State, 61 Texas Crim. Rep., 34, and other cases.

### 6.—Same—Insanity—Charge of Court—Requested Charge.

Where, upon trial of murder, the court's charge on insanity was one which has frequently been approved by this court, and he also submitted a requested charge upon the same subject, but refused certain other requested charges thereon, there was no reversible error.

### 7.—Same—Argument of Counsel—Bills of Exception.

Where it appeared from the bills of exception that the court orally directed the jury to disregard certain remarks of State's counsel in his opening argument, there is no reversible error.

### 8.—Same—Argument of Counsel—Oral Charge—Requested Charge.

Where, upon trial of murder, complaint is made on appeal that counsel for the State said, "Everybody was happy at the time of the killing except this assassin," and the court orally withdrew said remarks but refused to submit a written requested charge, there was no reversible error under the facts of the instant case. Following Hart v. State, 57 Texas Crim. Rep., 21, and other cases.

### 9.—Same—Argument of Counsel—Invited Error.

Where the State's counsel said to the jury in his argument, "You should convict the defendant; if he is really insane they will send him to the asylum from the penitentiary, and in doing that you will take no chance of making a mistake," and the trial judge certified that this ar-

gument was invited by and was in reply to that of counsel for defendant, there was no reversible error. Following Sinclair v. State, 35 Texas Crim. Rep., 132, and other cases.

### 10.—Same—Bills of Exception—Practice on Appeal.

The questions raised by bills of exception numbers 2, 3 and 5 were not briefed by appellant's counsel, but they have been considered by this court, and no error is disclosed.

### 11.—Same—Rehearing—Res Gestae Declarations.

Where appellant in his motion for rehearing combated the correctness of the conclusions reached, touching the admissibility of the declaration of appellant made immediately after his arrest and held in the main opinion, to come within the rule of *res gestae* declarations, this court must adhere to its construction given in the main opinion.

### 12.—Same—Res Gestae Declarations—Common Law—Article 810, C. C. P.

Where appellant in his motion for rehearing insisted that the rule of *res gestae* declaration is a common-law doctrine and that Article 810, C. C. P., against verbal confessions supersedes all common-law rules in conflict therewith; held, that this court, before said article was enacted, drew a distinction between declarations of one accused of crime, which were *res gestae*, and those which were confessions, and that the Legislature, in enacting said Article 810, had for its guidance the judicial interpretation of the old statute, and such difference still exists. Following Powers v. State, 23 Texas Crim. App., 66, and other cases.

### 13.—Same—Evidence—Letter—Husband and Wife—Article 795, C. C. P.

The previous opinion of this court, in construing Article 795, C. C. P., reflects the view that in cases of assault by the husband upon the wife, all evidence relevant to show the assault and previous threats made by the accused may be shown by the testimony of the wife. Following Bramlette v. State, 21 Texas Crim. App., 611, and other cases, and there was, therefore, no reversible error in admitting in evidence the letter written by the defendant to his wife in which he threatens her several months before he killed her.

Appeal from the District Court of Upshur. Tried below before the Honorable J. R. Warren.

Appeal from a conviction of murder; penalty, thirty-seven years imprisonment in the penitentiary.

The opinion states the case.

*T. H. Briggs,* and *Butler, Price & Maynor,* for appellant.—On questions of declaration of defendant and insanity. Hurst v. State, 40 S. W. Rep., 264; Barth v. State, 46 id., 228.

On question of argument of counsel, Exon v. State, 26 S. W. Rep., 1088; Smith v. State, 117 id., 970; Grimes v. State, 141 id., 261; Johnson v. State, 138 id., 1021.

On question of manslaughter, Williams v. State, 54 Texas Crim. Rep., 623; Rice v. State, 103 S. W. Rep., 1174.

*R. G. Storey,* Assistant Attorney General, for the State.

HAWKINS, JUDGE.—Appellant is under conviction for killing his wife, punishment having been assessed at confinement in the penitentiary for 37 years.

Appellant and deceased had been sweethearts for more than a year before the former enlisted in the United States Navy about the time the World War began. He served in the Navy during the war, during which time he and deceased corresponded regularly. He was discharged from the Navy about the first of January, 1920. They were married on May 9, 1920. The latter part of June appellant visited the office of a physician in company with deceased desiring that the physician produce an abortion upon his wife. Appellant's family lived at Carthage and deceased's family at Ore City. Appellant and his wife did not keep house after they married, but lived part of the time with his family and part of the time with her family. It appears from the record that deceased did not desire to live with appellant's family, not that she had any particular dislike to them, but wanted to keep house, and in the absence of that, preferred to live with her own people at Ore City. There appears in the record a letter written by appellant to her from Carthage in October, 1920, relative to her returning there. The letter is not set out here, but will be referred to later in discussing a legal proposition relative thereto. A baby was born to deceased on November 15, 1920. She had gone to her mother's about November 5th or 6th, being accompanied by appellant, and remained there up to the time of the homicide, appellant having stayed there with her family intermittently from the time she had gone there in November up until the time of the homicide, which occurred on December 27th. He had returned on December 23d. The day before the killing appellant and deceased had some conversation in which he was insisting on her returning to Carthage, and she had expressed her desire to remain at her mother's both on account of her own health and that of her baby, also because his family was not as well situated to accommodate them on account of house room as her own family. During this conversation appellant had announced that regardless of her wishes in the matter they were going to return to Carthage. On the morning of the homicide this same subject was renewed, and deceased appears to have given in to appellant's insistence, and was cleaning out a suit case preparatory to packing the same. At this time appellant was lying on the bed. Deceased took out of the suit case a small compass which she pitched over on the bed to appellant, but it rolled off on the floor. He appears to have believed, or at least pretended to believe, that the compass was broken in the fall, and became somewhat out of humor by reason of that fact, whereupon deceased told him that he knew that she did not break the compass that it was already broken. Her sister was present in the room during this time taking care of the baby. She says that in an endeavor to get him in a good humor deceased tapped him on the

cheek in what she denominated as a "love lick" or light tap, and in response appellant nearly slapped her down, at the same time remarking to her, "You knew I would do that." Deceased began to cry and appellant advised her that he did not want any "movie scene" pulled off there, and again broached the subject of her returning with him to Carthage, to which she replied that she was not going. He told her she was going or die, and when she started to leave the room he shot her and fired three more shots into her body after she had fallen to the floor, and then shot himself one time. Appellant interposed the plea of insanity, claiming that he had a severe attack of sickness while in the Navy, after which his mind seemed to be disturbed, and also showing that he claimed the baby born to his wife was not his child and that his confidence had been betrayed by deceased, and that this preyed upon his mind constantly, as a result of which he had lost his mental balance. Much evidence was introduced on the issue of insanity both by the State and appellant form professional as well as non-experts witnesses. This issue was submitted to the jury and determined against appellant's contention. There is no question but that the baby born to deceased was conceived prior to her marriage to appellant, but the State sought to prove that appellant had visited her prior to the marriage, and by inference at least that he was the father of the child.

Appellant insisted that the issue of manslaughter was raised and complains because the court declined to submit the same to the jury. On this account we have made a somewhat detailed statement of the facts immediately attending the killing. We are unable to agree that the issue of manslaughter was raised by the evidence. To our minds nothing occurred at the time of the killing which by itself would have been adequate cause. If the appellant's mind was aroused to anger because he believed that another than himself was the father of the child, that knowledge had come to him long before the homicide, for the evidence shows that within a little more than a month after their marriage he had taken his wife to a physician desiring aid from him in bringing about an abortion upon her. The baby was more than a month old at the time of the homicide and so far as the record discloses appellant was at the home of deceased's parents during the time his wife was expecting confinement and was all the time insisting that she return to the home of his own family and live with him. After a close scrutiny of the statement of facts we are of opinion the court properly declined to submit the issue of manslaughter to the jury. This disposes of bills of exception numbers 14, 15, 16, 20 and 26.

The first assignment of error discussed by appellant in his brief is brought forward for our review in bill of exception number 7. It is thereby made to appear that after appellant was in the custody of the constable and without being warned he made a statement to one

Early Melton, who testified over objection that he went to the place of the homicide, talked to appellant, helped to pick him up and put him on the bed; that appellant was suffering; he said that he and his wife had had some trouble; that he (appellant) had slapped her, and knew hell would be to pay and he would finish up the job; that there was one more cartridge in the pistol and that he left it in the gun because he was afraid someone would come in and "stomp" him and wanted it for protection. The court admitted this testimony upon the theory that it was proper to be considered on the issue of insanity, and in his charge limited its consideration to that purpose only. Unless it was otherwise admissible the trial court was clearly in error. It was formerly the rule in this State that all acts and conduct of accused while under arrest might be given in evidence against him on the issue of insanity regardless of whether he had been warned prior to said acts and conduct. See Adams v. State, 34 Texas Crim. Rep., 470; Burt v. State, 40 S. W. Rep., 1000; but this rule was modified in Hurt v. State, 40 Texas Crim. Rep., 378, and it was there held if the confession or statement was of a criminative character in connection with the case for which he was then being tried, that such acts and declarations could not be used in the absence of a proper warning. That this is now the settled law of the State there can be no question. See Barth v. State, 39 Texas Crim, Rep., 386; Plummer v. State, 86 Texas Crim. Rep., 487; Kellum v. State, (opinion delivered March 15, 1922). We are not discussing the acts and conduct of an accused while in jail or under arrest on collateral matters which are not incriminating in their character, as such acts may be shown upon the question of insanity, or as a predicate for opinions of non-expert witnesses relative to that issue. The rule as we understand it is, that statements of accused while under arrest or in jail which show directly or by inference his guilt of the crime charged should not be introduced by the State on the issue of insanity or as a predicate upon which to base the opinions of witnesses on that issue. That the statements made by appellant to the witness Melton were highly injurious to him and criminating in their nature there can be no doubt. It occurs to us, however, that this testimony was clearly admissible upon another theory. Melton arrived at the scene of the shooting within five or ten minutes after it occurred. It is true the constable and justice of the peace got there ahead of him, but appellant was still lying on the floor suffering from his self inflicted wound, and the witness helped pick him up and place him upon the bed and it was at this time that the statement was made. There is nothing in the record which would take the statements out of the *res gestae* class. It was unquestionably close enough to the transaction in point of time, and there seems to be no intimation that it was other than the transaction speaking through the mouth of the accused. If any error was committed it was committed against the State and in favor of appel-

lant, because we are of opinion the testimony was admissible for all purposes, and that the court should not have limited it to the question of insanity.    Powers v. State, 23 Texas Crim. App., 42; Bronson v. State, 59 Texas Crim. Rep., 17; Gowans v. State, 64 Texas Crim. Rep., 64.

It is made to appear by appellant's bill of exception number 4 that after Mrs. Newsome had testified to facts favorable to appellant's defense, in response to a question from the district attorney she said deceased, "was one of the sweetest girls she ever knew." Appellant objected to this testimony on the ground that the disposition of deceased in that respect was not in issue, and the court temporarily overruled the objection. We are referred to the statement of facts by the trial judge with reference to this bill and find that as soon as the next witness left the stand, the court having concluded he was in error in admitting the statement complained of, on his own motion withdrew it from the consideration of the jury. We do not think the statement complained of so obviously harmful that the prompt action of the court did not cure the error in its admission. When appellant objected to this evidence the district attorney replied "appellant had made an attack on deceased's character," to which remark exception was also taken. The reply seems to have been pertinent and unobjectionable when considered in connection with the testimony of Mrs. Newsome, and the contention on the part of appellant that he was not the father of the child born to deceased.

After the death of deceased there was found among her effects and identified as having been written to her by appellant, a letter as follows:

"Sunday Morn
10/10/20

Miss Irma Floy:

Your coolness has been quite a shock to me waiting until the last of the week to write then not seeming to give a dam if you did or not. Well old girl if you dont come this following Sat. night it wont do a hell of a lot of good to come for it will be all off with me, the old man killing desease has broke out on me again but I have determined to work until I cant move. They raised my wages to $4.50 per day last Thursday, have said about all I have to say.

As ever,

Ras

P. S. Last night you said you couldn't come so soon For Christ sake what has happened that it takes you so long to get ready to come guess will go to mill this afternoon dont know tore up as I am may be in hell next time you hear from me. But understand if you dont come by Sat. night it is all off course dont guess you give a dam."

The state introduced the letter, appellant objecting for the reason that it was a privileged communication, being a letter written by the

husband to the wife, and was therefore inadmissible for any purpose, and that it was in effect requiring the wife to give testimony against the husband. It being the contention of the State that appellant killed deceased because she had refused to leave the home of her parents and go with him, there is no question but that the letter was admissible upon the issue of motive, and as containing a veiled threat against deceased, unless the same should have been excluded under the objections urged by appellant.

Article 794, C. C. P., reads as follows: "Neither husband nor wife shall, in any case, testify as to communications made by one to the other, while married; nor shall they, after the marriage relation ceases, be made witnesses as to any such communication made while the marriage relation subsisted, except in a case where one or the other is prosecuted for an offense; and a declaration or communication made by the wife to the husband, or by the husband to the wife, goes to extenuate or justify an offense for which either is on trial." And Article 795, reads: "The husband and wife may, in all criminal actions, be witnessses for each other; but they shall, in no case, testify against each other, except in a criminal prosecution for an offense committed by one against the other."

Appellant contends that under the provisions of said articles as construed by this court the admission of such letter was error, and cites the cases of Gross v. State, 61 Texas Crim. Rep., 176, 135 S. W. Rep., 373; Walker v. State, 64 Texas Crim. Rep., 70, 141 S. W. Rep., 243; Hearne v. State, 50 Texas Crim. Rep., 431, 97 S. W. Rep., 1050. We are unable to agree with appellant's counsel that either of the cases support his proposition. In the Gross case the prosecution was for incest upon his daughter, and the letter there in question held inadmissible was to his wife. It had fallen into the hands of third parties without connivance of the wife. The soundness of the rule announced in that case has been questioned. (See Ruling Case Law, Vol. 28, Sec. 119, page 530, 33 L. R. A. (N. S.) 477.) It is not necessary to discuss it now. In the Walker and Hearne cases the prosecution was for bigamy, and the letters were written by defendant to his wife. It has been held many times in this State that the offenses of bigamy, adultery and incest are not offenses committed by one spouse against the other, and therefore under Article 795 (*supra*) the testimony of one spouse under such circumstances is not admissible against the other. Johnson v. State, 24 Texas Crim. Rep., 135; Boyd v. State, 33 Texas Crim. Rep., 470; Compton v. State, 13 Texas Crim. Rep., 271; Sargent v. State, 61 Texas Crim. Rep., 34. In the instant case appellant is charged with having killed his wife. That being an offense against her it occurs to us the sole question to be determined is, does that take the letter introduced in evidence out of the class of privileged communications. If appellant had made an assault upon his wife which had not resulted in her death, but only

33—92 T. C.

in serious injury and had been prosecuted therefor, it would not be contended seriously we take it but that she could have testified to threats made by appellant against her, or to statements made by him showing the motive for the assault. We are asked to extend the rule under the articles in question so as to exclude a communication written by the husband to the wife to a case in which he afterwards takes her life. Much the same contention was made in the case of Rice v. State, 54 Texas Crim. Rep., 149, where defendant was charged with having killed his wife by poison, and the State introduced certain *res gestae* statements made by her. Appellant sought to exclude them on the ground that it was calling the wife to tesify against the husband. In commenting upon the question this court used the following language.

"To our minds it is a monstrous doctrine to hold that where the husband poisons the wife that the wife is disqualified by reason of our statute to testify against him. We do not believe our Legislature ever intended such to be the law. It would place the wife at the mercy of the husband. We believe this would be an unreasonable law such as our law makes never intended and did not pass."

A comment to the same effect is found in the case of Robbins v. State, 73 Texas Crim. Rep., 367. The rule protecting privileged communications between husband and wife both under the common law and under our statute was based upon public policy and the desire to maintain marital relations and communications between them without suspicion or restraint of any kind. Mr. Wigmore in Vol. 4, Section 2338, under the head of Privileged Communications, announces the following proposition: "At common law where exceptions were recognized to the rule forbidding one spouse to testify against the other, i. e., in the case of certain injuries done by one to the other, it would seem that the present rule (excluding privileged communications) suffered also an exception, and properly."

To hold that the letter in question was improperly admitted would be to lose sight of the policy of the law making communications between husband and wife privileged in order to secure the peace of the twain and to protect and keep inviolate that mutual confidence so essential to their happiness. It was never the intention of the law nor the purpose of the rule to protect a husband or wife who severed the marital relation by violence toward the other resulting in the latter's death. We, therefore, hold that the trial court committed no error in admitting the letter in evidence. The same comes within the spirit of the law permitting a husband or wife to testify against the other relative to an offense committed against the one so testifying. The leter was taken out of the class of privileged communications by the act of appellant when he committed the deadly assault upon his wife.

Exception was taken to the court's charge on the isue of insanity. The charge upon this subject is one which has so frequently been ap-

proved by this court that we deem it unnecessary to burden the opinion with a copy of it. Four special charges upon the issue were requested. Three were refused and the following given: ''You are instructed that whether the insanity be general or partial, whether fixed or periodical, the degree of it must have been sufficiently great to have controlled the will of the accused, and to have taken from him the freedom of moral action at the time of the commission of the act, so therefore, I instruct you, if, at the time the defendant took the life of the deceased, if he did take it, and at the time the mental and physical faculties were not under the control of the defendant, or, if some controlling mental or physical disease was, in truth, the acting power within him which he could not resist, and he was impelled without intent, reason or purpose, he would not be accountable to the law.''

We believe the general charge was sufficient; but unquestionably after being supplemented with the special given the issue was fully covered. The other requested instructions upon the subject were properly refused.

Exceptions were reserved (Bills 22 and 23) to some remarks of counsel representing the State in his opening argument. We have examined the bills, and it appears therefrom that the court orally directed the jury to disregard such portion of the remarks as were thought to be objectionable. In our opinion no error is shown requiring a further discussion.

Complaint is also made by Bill 24 that counsel said, ''Everybody was happy at the time of the killing except this assassin.'' A special charge was requested directing the jury not to regard the statement. The trial judge qualifies the bill by stating that he did instruct the jury orally not to consider the reference to defendant as an ''assassin,'' but did not give the special charge because he did not hear it used in the way therein shown. When an argument is complained of as inflammatory the evidence and verdict will be considered in passing on the question. Hart v. State, 57 Texas Crim. Rep., 21; Davis v. State, 48 Texas Crim. Rep., 644. If the State's evidence in the instant case is to be believed appellant killed deceased for no other reason than that she declined to go with him as requested. While the language complained of was strong, yet the propriety of the criticism is questionable. If improper, we are not willing to say it was so obviously harmful as to render it incapable of withdrawal by the prompt action of the court. Marta v. State, 81 Texas Crim. Rep., 135; Borrer v. State, 83 Texas Crim. Rep., 198.

During his closing argument the district attorney used the following language, to which exception was taken: ''You should convict the defendant; if he is really insane they will send him to the asylum from the penitentiary, and doing that you will take no chance of making a mistake.''

The trial judge certifies that the argument was invited and was in reply to that of counsel for appellant, who stated in substance to the jury that "defendant was in fact a dangerous man, and if the jury acquitted him, he would not be turned loose on the public for he (the speaker) would be the first man to file a complaint against him for insanity."

The language of the district attorney was clearly provoked and invited by that of counsel for appellant. Under these circumstances the latter has no just ground of complaint. That appellant cannot complain of argument provoked or invited by conduct of his own counsel has been frequently held by this court. Sinclair v. State, 35 Texas Crim. Rep., 132; Watson v. State, 90 Texas Crim. Rep., 576, 237 S. W. Rep., 298, and cases therein cited.

We have reviewed all matters discussed by counsel for appellant in their brief. The questions raised by bills of exception numbers 2, 3 and 5 were not briefed by appellant, but notwithstanding this we have examined said bills and are of opinion no errors are presented thereby.

Finding no errors in the record which would call for a reversal, the judgment of the trial court is affirmed.

*Affirmed.*

## ON REHEARING.

### November 1, 1922.

MORROW, PRESIDING JUDGE.—Combatting the correctness of the conclusion reached touching the admissiblty of the declaration of the appellant made immediately after his arrest and held in the opinion of this court to come within the rule of *res gestae* declarations; the appellant contends that the declaration in question is to be classified as a confession and that the statute inhibiting the introduction of verbal confessions operates upon the testimony introduced and precludes its admissibility. He insists that the rule of *res gestae* declarations is a common-law doctrine and that Article 810, Code of Crim. Proc., the statute against verbal confessions, supersedes all common-law rules in conflict therewith. If the appellant's premise that the declaration proved was a confession was correct, the soundness of his argument might be conceded. As we conceive it, however, the question turns upon whether the declaration can be properly classified as a confession. Appellant, after shooting his wife to death, shot himself. Melton testified that he went to the house where the tragedy occurred immediately thereafter, saw the appellant and helped pick him up and put him on the bed. The witness reached the scene about five or ten minutes after the shots were fired. The witness said: "Of course he was suffering, but he did not seem to be frightened much. He was rational or seemed to be." With reference to why he shot himself, appellant said that "he had slapped

his wife and that he knew that hell was to be paid and that he might finish up the job." It was shown that both the constable and the justice of the peace were in the room at the time, and while no formal arrest had been made, the constable remained with the appellant.

The statute touching confessions, in its present form, was enacted in 1907. (See Acts of 1907, p. 219.) In the year 1887, in an opinion of this court, the distinction between declarations of one accused of crime which were *res gestae* and those which were confessions was delineated. The court said:.

"Our statute relating to or prescribing the rules under which admissions or confessions of a party being in arrest may be used against him have uniformly been construed to embrace all statements, acts or conduct from which guilt might be inferred. . . . That defendant was under arrest, as shown by the circumstances above mentioned, can scarcely be questioned; that an inference of guilt might well be predicated upon his statement, 'If I have killed him nobody saw me,' will not be denied. And, again, the inference may also be correct that defendant was in fear of his life when he made the statement, and a statement made under such circumstances could not be regarded as voluntary. . . .

As confessions or as admissions of fact from which guilt might be inferred, we are of opinion that the objections urged to the admission of the testimony should perhaps be considered well taken. The question, then, is, was the testimony admissible as *res gestae*? If *res gestae*, then the evidence was admissible notwithstanding it might not be admissible as a confession or admission, because *res gestae* is independent of, superior to, and cannot be restricted or limited by the rules relating to confessions or admissions made after arrest. Whilst it is true that declarations made by a defendant in his own favor, unless part of the *res gestae*, are not admissible for the defense, it is otherwise equally true that when such declarations are part of the *res gestae* they are admissible either for or against the defendant." (Powers v. The State, 23 Texas Crim. App., 66.)

In enacting the statute on confessions, Article 810 of the Code of Crim. Proc., the term "confession" is not defined, but in Article 10 of the Penal Code, the idea commonly conveyed by the word, in connection with the context, is to be taken as its meaning. The term "confession" as it is commonly used signifies a voluntary and deliberate admission, while *res gestae* declarations are spontaneous and exclude the idea of deliberateness. In the matter in hand, the Legislature at the time that it supplemented the old statue on confessions by the present Article 810 had for its guidance the judicial interpretation of the old statute. By this interpretation the distinction between confessions and *res gestae* declarations is recognized, and the *status* of the rule of *res gestae*, as applied to the declarations of one accused, under arrest, as a part of the law of this State, definitely recognized.

On this subject, we quote further from the opinion: "*Res gestae*
are events speaking for themselves through the instinctive words and
acts of participants, not the words and acts of participants when re-
lating the events. . . . Nor are there any limits of time within
which the *res gestae* can be arbitrarily confined. They vary in fact
with each particular case. . . . They need not be co-incident as
to time if they are generated by an excited feeling which extends
without break or let down from the moment° of the event they il-
lustrate. In other words, they must stand in immediate casual re-
lation to the act, and become part either of the action immediately
producing it, or of action which it immediately produces. Incidents
which are thus immediately and unconsciously associated with an
act, whether such incidents are doings or declarations, become in this
way evidence of the character of the act." (Powers v. The State, 23
Texas Crim. App., 67.)

This judicial interpretation of the statute antecedent to its re-
enactment, in accord with the universal rule of construction, reflects
the intent of the Legislature. Lewis v. State, 58 Texas Crim. Rep.,
361. In that Case, quoting from Sutherland on Statutory Con-
struction, it is said: "In the interpretation of reenacted statutes the
court will follow the construction which they received when previous-
ly in force. The Legislature will be presumed to know the effect
which such statutes originally had, and by reenactment to intend that
they should again have the same effect."

The application of this principle to the present question seems
clear. This view we understand to be the one taken by this court
with reference to the same subject-matter in the case of Bronson v.
State, 59 Texas Crim. Rep., 21.

Touching the introduction in evidence of the letter which was
written by the appellant, addressed to his wife and found among her
effects after her death, the appellant strenuously insists that in
holding such letter admissible, this court was in error. Article 794
of the Code of Crim. Proc., is invoked by the appellant in support of
this contention. That article reads thus:

"Neither husband nor wife shall, in any case, testify as to com-
munications made by one to the other, while married; nor shall they,
after the marriage relation ceases, be made witnesses as to any such
communication made while the marriage relation subsisted, except in
a case where one or the other is prosecuted for an offense; and a
declaration or communication made by the wife to the husband, or
by the husband to the wife, goes to extenuate or justify an offense
for which either is on trial."

We quote the succeeding Article 795 of the Code of Crim. Proc.:

"The husband and wife may, in all criminal actions, be witnesses
for each other; but they shall, in no case, testify against each other,

except in a criminal prosecution for an offense comitted by one against the other.''

The previous opinion of this court reflects the view that in cases of assault by the husband upon the wife, all evidence relevant to show the assault and previous threats made by the accused may be shown by the testimony of the wife. In other words, such evidence is by Article 795 withdraw from the exception established by Article 794. The rule is thus stated in Cyc. of Law & Proc., Vol. 21, p. 915;

''Evidence of previous difficulties between defendant and deceased, and of the state of the former's feelings toward the latter, is admissible on the trial of an indictment for murder. It is also proper to introduce evidence of facts tending to show the cause of such difficluties and ill-feeling.

''This rule is peculiarly applicable on the trial of a husband for the murder of his wife. This ill-treatment, recent acts of personal violence, and threats by defendant to kill his wife may be shown as bearing on motive.''

The application of this principle, we think, is illustrated in Bramlette v. State, 21 Texas Crim. App., 611; Navarro v. State, 24 Texas Crim. App., 378; Hall v. State, 31 Texas Crim. Rep., 565; see, also, Johnson v. State, 94 Ala., 54; 106 Amer. St. Rep., 766. Bramlette's case is one in which the accused had been charged with assault with intent to murder his wife. She was called as a witness for the State and refused to testify. The court held that she was a competent witness and compelled to testify, citing Dumas v. State, 14 Texas Crim. App., 465; Turner v. State, 60 Miss., 351; 1 Greenleaf on Ev., Sec. 45; 2 Phillips on Evidence, Sec. 941. The court's conclusion is thus stated:

''In such a case, it is said, that it is for the injury to the public committed upon it through the person of the wife, and the husband is punished. It is the offense against the public for which he is tried; he is the offender of the public, and not the wife alone, and she is competent to testify as a witness for the public, and not as a witness for herself. It is a competency not to be waived by her, or affected by her desires or fears. The court did not err in its ruling upon this question.'' (Bramlette v. State, 21 Tex. Crim. App., 618.)

If the threat against the deceased implied in the letter which was introduced in evidence had been a verbal threat, and the wife lived after the assault, the right of the State to compel her to testify to the threat, in our judgment, under the terms of Article 795, as construed by this court in Bramlette v. State, *supra,* cannot be gain-said; so if she had survived the assault, she might have been compelled to testify that she had received the letter in question. The threat and evil disposition toward the deceased, expressed in the letter, was a relevant fact in the prosecution of the accused for the assault upon his wife, though the assault resulted in her death. The contents of the

letter and the writing of it by the appellant, being pertinent and competent evidence bearing upon the assault which he had made upon his wife, we think there is no law which would give him the privilege of having the court to exclude the letter, it being proved by competent evidence that he had written it. The fact that he threatened to injure her, when he afterwards did injure her never, under the construction of the statute in Bramlette's case or others, according to our. conception, was privileged.

Other questions in the motion for rehearing are but reiterations of the questions decided in the original opinion. Adhering to the conclusions there expressed, we order the motion overruled

*Overruled.*